[No. B058244. Second Dist., Div. Four. Aug. 13, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
VINCENT TODD ARMSTRONG, Defendant and Appellant.

## COUNSEL

Christine Vento, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, Robert F. Katz and Douglas Sortino, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

TAYLOR, J.*—Vincent Todd Armstrong appeals from the judgment entered following a jury trial in which he was convicted of assault by means of force likely to produce great bodily injury in violation of Penal Code section 245, subdivision (a)(1),[1] and use of a destructive device with the intent to injure, intimidate, or terrify any person or to injure and destroy property in violation of section 12303.3. The issue of appellant's prior conviction was bifurcated and the trial court found that appellant had previously been convicted of residential burglary, a serious felony within the meaning of section 667, subdivision (a). He contends there was insufficient evidence of force likely to produce great bodily injury with regard to the assault charge; that the destructive device conviction is not a serious felony within the meaning of sections 667, subdivision (a) and 1192.7, subdivision (c); and that the court abused its discretion in consolidating the trial of the two offenses.

### STATEMENT OF FACTS

*Assault Count*

On December 27, 1989, Alana Lamorie used a pay telephone near the location of the Fireside Restaurant in Downey. As she walked back to her car, appellant, while in his truck, asked her if she knew a certain person who had gone into the Fireside and did she like "to party." Lamorie "kind of

---

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.

[1]All statutory references are to the Penal Code unless otherwise specified.

ignored" appellant. She entered her car to gather her purse and to lock her car so she could go to the Fireside to see if her boyfriend was there. Appellant approached her on foot on the driver's side of the car and handed her a business card. Lamorie saw that it was a Sherwood Apartments business card and mentioned she used to live there. Appellant asked her if she knew people that lived in the apartment and Lamorie stated she did not. The business card had appellant's name on it and a phone number. Appellant then leaned in the door and grabbed the sides of Lamorie's face and pinched both sides of her mouth. Lamorie thought appellant was going to try to kiss her. Lamorie asked appellant what he was doing and a struggle ensued. Appellant grabbed Lamorie's jaw tightly and she struggled to get away. Lamorie turned, braced herself and kicked appellant out of the car. Appellant had grabbed hold of Lamorie's shirt and ripped it, and Lamorie fell out of the car. Appellant and Lamorie both landed on the ground and Lamorie was screaming. While appellant was on top of Lamorie, holding her down so she could not get up, he shoved his whole hand down her throat so she would not scream, scratching the back of her throat and causing it to bleed. While Lamorie was on the ground, people came out from the Fireside. Appellant got off of her, jumped in his truck and drove away. After the assault, Lamorie had bruises on her arms, face and jaw. Her throat was very sore. There were three long fingernail scratches on the back of her throat and she had no voice the next day. She did not get medical attention but gargled with peroxide and water.

*Destructive Device Count*

On August 13, 1990, James Kemp was living at 17219 De Groot Drive in Cerritos. At approximately 10:30 or 11 p.m., Kemp went outside of his house in response to a telephone call. He went to the side of his house and stood by the side of his wall between some trees. After about twenty minutes, he saw two cars pass by and one car made a U-turn. Kemp recognized appellant as the driver of the vehicle which made the U-turn. Appellant had been to Kemp's house before, because appellant was dating Kemp's daughter. After a while, Kemp saw a person; he then looked up and saw a flame in the sky and heard a bottle break. He saw that the flame landed outside the wall but the bottle broke inside his wall by his swimming pool. When the bottle broke, Kemp smelled gasoline. He saw appellant standing nearby and chased him. When Kemp went back to see what was burning, he saw it was a rag made from a piece of clothing. The flame was put out by kids from across the street. Kemp's wife, daughter and grandchild were in the house watching television in the den. The den light was on and there was a long sliding glass door in the den which opened onto the back where the pool was located. Kemp estimated that the bottle of gasoline broke approximately 15 feet from his house.

James Gonzales, a deputy sheriff for the County of Los Angeles, working out of the arson-explosives detail, investigated the incident at Kemp's residence. Several days after the incident and following waiver of his rights pursuant to *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], appellant told Gonzales that he had left his girlfriend after they argued at her home and had gone to his own home. He was so upset that he siphoned gasoline out of the gas tank of his truck, placed it into a bottle and returned to the Kemp residence and threw the bottle over the fence. Appellant stated he did not know anything about a burning rag, and that while he had used a rag to clean his hands, he did not place it into the bottle. Appellant stated he just wanted to break a window there because he was mad.

Following his convictions on the substantive offenses, appellant waived his right to a jury on the issue of his prior conviction. The court received a certified packet of records from the Los Angeles County Sheriff's Department. Additionally, the court took judicial notice of the record in case No. A-466601, which contained a plea form and a transcript of the proceedings of February 4, 1986, in which appellant pled guilty to first degree burglary.

DISCUSSION

I

■ Appellant's contention that there was insufficient evidence to support the conviction of assault with force likely to produce great bodily injury is without merit. ■ "The proper test to determine a claim of insufficient evidence in a criminal case is whether, on the entire record, a rational trier of fact could find appellant guilty beyond a reasonable doubt. [Citations.] In making this determination, the appellate court 'must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citations.] . . . '[O]ur task . . . is twofold. First, we must resolve the issue in the light of the whole record. . . . Second, we must judge whether the evidence of each of the essential elements . . . is substantial.' [Citation.]" (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303 [228 Cal.Rptr. 228, 721 P.2d 110], italics omitted.)

■ "The statute prohibits an assault by means of force *likely* to produce great bodily injury, not the use of force which does *in fact* produce such injury. While . . . the results of an assault are often highly probative of the amount of force used, they cannot be conclusive." (*People* v. *Muir* (1966)

244 Cal.App.2d 598, 604 [53 Cal.Rptr. 398], italics in original.) "[T]he question of whether or not the force used was such as to have been likely to produce great bodily injury, is one of fact for the determination of the jury based on all the evidence, including but not limited to the injury inflicted. [Citations.]" (*Ibid.*)

Great bodily injury is bodily injury which is significant or substantial, not insignificant, trivial or moderate. (See *People* v. *Covino* (1980) 100 Cal.App.3d 660, 667 [161 Cal.Rptr. 155]; CALJIC No. 9.02.)

█ During the attack, appellant grabbed both sides of Lamorie's face and pinched both sides of her mouth. He ripped her clothing. Appellant held Lamorie's jaw tightly and while on top of her, he shoved his whole hand down her throat so she would not scream. We conclude that a reasonable jury could find beyond a reasonable doubt that the force used on Lamorie constituted force likely to produce great bodily injury.

## II

The court sentenced appellant pursuant to section 667, subdivision (a) to an additional five years in prison, stating it was relying on section 1192.7, subdivisions (c) (15) and (27) in finding that appellant had been convicted of a serious felony.[2]

█ Appellant contends the trial court erred when it found his conviction of section 12303.3 to be a serious felony.[3] He claims that evidence established and the jury found that appellant attempted to explode the destructive device or explosive with the intent to injure property only, and with that intent, rather than an intent to injure persons, the crime did not qualify as a serious felony.[4] We hold as a matter of first impression that "intent to injure" as used in section 1192.7, subdivision (c)(15) includes

---

[2]Section 667, subdivision (a) provides an additional five-year prison term for repeat offenders convicted of a serious felony who previously have been convicted of another serious felony. Serious felony is defined by reference to section 1192.7, subdivision (c), which lists categories qualifying as serious felonies. Section 1192.7, subdivision (c)(15) provides that "exploding a destructive device or any explosive with intent to injure" is a serious felony and section 1192.7, subdivision (c)(27) provides that "any attempt to commit a crime listed in this subdivision other than an assault" is a serious felony.

[3]Section 12303.3 provides that: "Every person who possesses, explodes, ignites, or attempts to explode or ignite any destructive device or any explosive with intent to injure, intimidate, or terrify any person, or with intent to wrongfully injure or destroy any property, is guilty of a felony, and shall be punished by imprisonment in the state prison for a period of three, five, or seven years."

[4]The verdict form stated the jury found appellant guilty of the crime of use of destructive device and explosive to destroy property in violation of section 12303.3, a felony, as charged

either the intent to injure any property or the intent to injure any person. A conviction under section 12303.3 based on either the intent to injure property or the intent to injure a person is sufficient to establish a serious felony within the meaning of section 1192.7, subdivision (c)(15).

■ " 'The fundamental principle of statutory interpretation is to ascertain the legislative intent in order to effectuate the purpose of the law.' [Citations.] [A statute is construed] by referring to the entire statutory system of which it forms a part to achieve harmony among the various provisions. [Citations.] When the language is clear and unambiguous, there is no need for construction, and courts should not indulge in it. [Citations.]" (*In re Steven E.* (1991) 229 Cal.App.3d 1162, 1165-1166 [280 Cal.Rptr. 540].) ■ Additionally, the " 'Legislature and the electorate by the initiative process are deemed to be aware of laws in effect at the time they enact new laws and are conclusively presumed to have enacted the laws in light of existing laws having direct bearing upon them. [Citations.]' " (*In re Thanh Q.* (1992) 2 Cal.App.4th 1386, 1389 [4 Cal.Rptr.2d 19].)

■ Section 12303.3, which makes it a crime to attempt to explode a destructive device or explosive "with intent to injure . . . any person, or with intent to . . . injure . . . any property," became effective in 1970. (Stats. 1970, ch. 771, § 6, p. 1458, eff. Aug. 19, 1970.) Sections 667 and 1192.7 were enacted as a part of an initiative measure, Proposition 8, approved June 8, 1982. Given the preexisting language of section 12303.3, had the drafters of section 1192.7 intended to limit the intent to "intent to injure any person," the statute would have so specified. The omission of the object of the intent to injure in section 1192.7 is significant in that it evidences the drafters' intention to encompass both the intent to injure property and the intent to injure persons.

This interpretation does not conflict with the purpose of the initiative. Quoting *People* v. *Jackson* (1985) 37 Cal.3d 826, 832 [210 Cal.Rptr. 623, 694 P.2d 736], this court observed that the list of crimes in section 1192.7 included either violent felonies or nonviolent crimes " 'so dangerous that

---

in count 4 of the consolidated information. count 4 of the second amended and consolidated information charged appellant with the crime of "use of destructive device and explosive to destroy property, in violation of Penal Code section 12303.3" in that appellant did "willfully and unlawfully possess, and attempt to explode and ignite a destructive device and explosive with intent to injure, intimidate, and terrify and to wrongfully injure and destroy property." The specially prepared jury instruction advised the jury: "In order to prove such crime, each of the following elements must be proved: [¶] 1. An attempt was made to explode or ignite any destructive device or explosive; and [¶] 2. Such attempt was made with the specific intent to injure intimidate or terrify any person or with the specific intent to wrongfully injure or destroy any property."

[their] repeated occurrence might in the mind of the voters call for enhanced punishment equivalent to that imposed upon violent recidivists.'" (*People* v. *Jameson* (1986) 177 Cal.App.3d 658, 662 [223 Cal.Rptr. 108].) This court concluded that it was not inappropriate to classify as a serious offense all arsons and that while there may be no inherent threat to life by the commission of the crime of burning one's own property with intent to defraud an insurer, it was a reasonable and proper purpose of section 667 to discourage persons from repeating serious felonies. This court noted that Californians had the interest "'expressed in all recidivist statutes, in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law.'" (*Ibid.*) This court concluded that it was not unreasonable, arbitrary or capricious to decide that arson of one's own property with either intent to defraud or injure another person, another person's structure, forest land or property posed a serious danger to society. Similarly, our conclusion that section 1192.7, subdivision (c)(15) encompasses crimes committed with destructive or explosive devices with the intent to injure either persons or any property, is consistent with the purpose of Proposition 8 and the recidivist statute.

Whether appellant intended to injure property, persons, or both, the court did not err in concluding that appellant's conviction constituted a serious felony for purposes of imposing an enhancement pursuant to section 667, subdivision (a). (See *People* v. *Equarte* (1986) 42 Cal.3d 456, 467 [229 Cal.Rptr. 116, 722 P.2d 890].)

III

CONSOLIDATION[5]

Initially, the offenses arising from the attack on Lamorie and those involving Kemp were charged in separate informations. On a motion by the prosecution, the court consolidated the cases. It was conceded by appellant that the two cases presented the same class of crimes. Appellant argued, however, there was no cross-admissible evidence, that the two cases presented highly inflammatory charges, that appellant would testify in one case and not the other, and that one case was somewhat stronger than the other.

---

[5]In a second amended and consolidated information appellant was charged as a result of the attack on Lamorie with the crimes of assault by means of force likely to produce great bodily injury, assault with intent to commit rape, and second degree robbery. As a result of the incident involving Kemp, appellant was charged with the crimes of attempting to explode a destructive device with the intent to commit murder, and attempting to explode the device with the intent to injure, intimidate, terrify and to wrongfully injure and destroy property. The information also alleged that appellant had suffered a prior serious felony conviction within the meaning of section 667, subdivision (a).

■ Appellant's contention that the trial court abused its discretion when it consolidated the two cases is without merit. Section 954 provides in pertinent part: "An accusatory pleading may charge two or more different offenses connected together in their commission, . . . or two or more different offenses of the same class of crimes or offenses, . . . provided, that the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses . . . be tried separately . . . ." Section 954.1 added by initiative measure, Proposition 115, approved June 5, 1990, provides that ". . . evidence concerning one offense or offenses need not be admissible as to the other offense or offenses before the jointly charged offenses may be tried together before the same trier of fact."

Appellant conceded that the crimes charged were assaultive crimes and properly subject to joinder. Having met the statutory requirements for joinder, appellant can predicate error only upon a clear showing of prejudice which appellant has failed to do. (*People* v. *Balderas* (1985) 41 Cal.3d 144, 171 [222 Cal.Rptr. 184, 711 P.2d 480]; *Williams* v. *Superior Court* (1984) 36 Cal.3d 441, 447 [204 Cal.Rptr. 700, 683 P.2d 699].) Neither case was more inflammatory than the other, and the strength of the proof relevant to the two cases did not differ significantly. (See *People* v. *Sully* (1991) 53 Cal.3d 1195, 1222-1223 [283 Cal.Rptr. 144, 812 P.2d 163].)

DISPOSITION

The judgment is affirmed.

Woods (A. M.), P. J., and Epstein, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 12, 1992.