Filed 8/3/21  In re N.M. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re N.M., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B304412 (Super. Ct. No. MJ24625) (Los Angeles County) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>N.M.,<br><br>    Defendant and Appellant. | |

N.M. appeals a dispositional order declaring him a ward of the court and placing him home on probation.  (Welf. & Inst. Code, § 602.)  The order follows the juvenile court's finding that N.M. committed assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)) and made criminal threats (*Id*., § 422, subd. (a)).  N.M. contends the court erred when it found him competent to proceed to adjudication and

refused to appoint a second expert to opine on this issue. N.M. also contends the juvenile court lacked sufficient evidence to sustain the allegations that he committed the charged offenses.

We affirm the dispositional order.

## FACTUAL BACKGROUND

Los Angeles County Sheriff deputy Adan Ordaz responded to a domestic disturbance call at a Lancaster home on July 8, 2019. He saw appellant N.M. standing outside the house yelling profanities at the occupants of a car in the driveway. Deputy Ordaz detained N.M. in his patrol car and began interviewing those at the scene.

N.M.'s mother, told the deputy that her son's girlfriend K.F. walked into her bedroom visibly upset after an argument with N.M. K.F. did not want to talk about why she was upset. N.M. entered the bedroom a few minutes later and the two minors walked out, only to resume arguing loudly. N.M.'s mother called 911 when she tried but failed to calm them down. She told the deputy she saw her son pull K.F. into his bedroom, pick her up, then throw her to the floor.

Deputy Ordaz recalled K.F. shaking and crying when he interviewed her. She said the argument began when she declined N.M.'s sexual advances and tried to leave his bedroom. He pulled her back into the bedroom and threw her on top of a mattress. He punched her multiple times in the arm and leg then choked her hard enough to block her breathing for about 20 seconds. She ran to N.M.'s mother's bedroom but N.M. persuaded her to come out. He again pulled her into his bedroom, picked her up, then "slammed" her to the ground. When K.F. told N.M. she would tell her brothers what he had done, he told her "he would get a gun and kill . . . her brothers and . . . her" if she did so. She said

2

she had previously seen appellant with a black and brown semiautomatic pistol he kept in the garage or his bedroom. Deputy Ordaz searched both locations but found no weapon.

K.F.'s parents were the occupants of the car in the driveway when Deputy Ordaz arrived. K.F.'s mother said K.F. described how appellant grew angry when he "wanted her to have sex and she didn't want to have sex, and he grabbed her and choked her and tried to pull her in the room." N.M. came outside the house when they arrived and told them, "I'm not scared of you all. I'll shoot you." K.F.'s father[1] told the deputy that he feared for their lives when N.M. went inside the house because he believed the boy would re-emerge with a gun and carry out his threat.

PROCEDURAL BACKGROUND

Defense counsel presented a psychological report in August of 2019 indicating N.M. might have difficulty helping counsel prepare his defense. The court suspended the proceedings and appointed Velia Inez Gonzalez, Ph.D. to evaluate him. It scheduled a competency hearing and ordered N.M. to remain in juvenile hall.

Dr. Gonzalez interviewed N.M. and prepared a written evaluation. She concluded N.M. was incompetent and would not likely obtain competency in the foreseeable future.[2] She

---

[1] K.F.'s father passed away two months later. His death was not related to this incident.

[2] Subdivision (e) of section 709 of the Welfare and Institutions Code states in relevant part that "[i]f the court finds, by a preponderance of [the] evidence, that the minor is incompetent, all proceedings shall remain suspended for a period of time that is no longer than reasonably necessary to determine

reiterated this opinion when testifying at the competency hearing. The court rejected her finding, denied defense counsel's request to appoint a second expert, and reinstated the proceedings on the People's amended felony petition. The adjudication hearing took place over three days in January of 2020.

N.M.'s mother and K.F. changed their accounts of the incident when they testified at the hearing. N.M.'s mother denied any physical contact occurred at all. She claimed to have called 911 only so police could calm down K.F. and remove her from the house. She also denied her son spoke to K.F.'s parents when they arrived to pick her up. K.F. denied the attack entirely and said she never spoke to a sheriff's deputy. K.F.'s mother, in contrast, gave an account consistent with her initial interview with Deputy Ordaz. The juvenile court permitted Deputy Ordaz to testify about K.F.'s and N.M.'s mother's initial statements to the extent they were inconsistent with their in-court testimony. (Evid. Code, § 770.)

The juvenile court found two of the amended petition's five counts true: (1) count one for assault by means of force likely to produce great bodily injury as to K.F. (Pen. Code, § 245, subd. (a)(4)); and (2) count three for making criminal threats, also to K.F. (*Id*., § 422, subd. (a)). It granted N.M.'s motion for directed verdict on the battery charge (count two) and found the People had not proven its criminal threats charges involving K.F.'s father and mother (counts four and five). It declared appellant a ward of the court and placed him home on probation for four years and eight months.

---

whether there is a substantial probability that the minor will obtain competency in the foreseeable future."

N.M. appeals the court's competency rulings and its sustaining of counts one and three of the amended petition.

DISCUSSION

*1. N.M.'s Competency*

The law presumes minors age 14 and older are competent to face juvenile delinquency proceedings. (Pen. Code, § 26.) The party asserting incompetency bears the burden of proving the minor "lacks sufficient present ability to consult with counsel and assist in preparing [his or her] defense with a reasonable degree of rational understanding, or lacks a rational as well as factual understanding, of the nature of the charges or proceedings against [him or her]." (Welf. & Inst. Code, § 709, subd. (a)(2).) We review competency findings for substantial evidence, viewing the record "in the light most favorable to the juvenile court's determination." (*In re R.V.* (2015) 61 Cal.4th 181, 200.) The inquiry on appeal concerns "whether the weight and character of the evidence of incompetency was such that the juvenile court could not reasonably reject it." (*Id.* at p. 203.)

N.M. asserts the juvenile court could not have reasonably rejected what amounted to undisputed evidence of his lack of competency. Dr. Gonzalez stated N.M.'s full scale IQ of 54 fell "significantly below normal range." School records indicated he received special education services to address "weaknesses in attention, phonemic awareness, short-term auditory memory, visual processing and conceptualization." Dr. Gonzalez administered the Juvenile Adjudicative Competence Interview (JACI) and concluded he did not "have a clear understanding of his current charges, the nature and purpose of a court trial, the role of a prosecutor and a probation officer, how to assist [his] lawyer in his defense, and a plea bargain." Two psychological

5

evaluations performed the same year likewise doubted his competency. Appellant likens his case to *In re R.V.*, *supra*, 61 Cal.4th 181, in which the Supreme Court reversed a finding of competence where the court-appointed expert concluded the minor's mental illness and developmental disabilities prevented him from assisting in his defense.

*In re R.V.* is an imperfect analogue. R.V.'s court-appointed evaluator described the minor as "'legitimately confused'" about what was occurring and as possibly suffering from a psychotic disorder such as schizophrenia. (*In re R.V.*, *supra*, 61 Cal.4th at p. 206.) The minor could not articulate the reason for his detention or provide the evaluator with basic background information. (*Id.* at p. 204.) N.M.'s evaluator observed no such confusion. She found him "oriented to place, person, situation, and date" and described his thought content as "future-oriented and relevant to questions asked." N.M. spoke clearly and coherently to her and displayed no inappropriate behaviors or perceptual disturbances. He described the nature of the charges against him, the roles of the prosecutor and defense counsel, and his willingness to participate in house arrest and therapy if it enabled him to return home. This prompted the court to conclude "that [N.M.], who otherwise communicates well and clearly, may need a little bit of extra time from counsel in understanding what's going on with his case . . . even in the material that Dr. Gonzalez testified to, he understands what his case is about, he understands what it means to plead, to admit or not admit what happened, and when one would do that." The evidence provided a substantial basis for the juvenile court to find N.M. competent to proceed despite his cognitive delays and learning difficulties.

6

## 2. Defense Counsel's Request to Appoint a Second Expert
### to Opine on N.M.'s Competency

The juvenile court may appoint another expert to evaluate a minor's competency if it finds the first expert's methodology or reasoning flawed. (See *In re R.V.*, *supra*, 61 Cal.4th at p. 216 ["When, as here, the expert concludes that the minor is incompetent but the juvenile court finds flaws in the expert's methodology and reasoning, the court should consider appointing a second expert to inform the court's view that the first expert's opinion is inadequate"].) N.M. argues the court abused its discretion by declining defense counsel's request to appoint another expert after rejecting Dr. Gonzalez's findings.

We conclude no abuse occurred. The juvenile court found N.M. competent based on facts gleaned from Dr. Gonzalez's live testimony, her written evaluation, and from psychological records and other documents submitted to her by defense counsel. The court parted ways with the expert because it felt she set the bar of juvenile competence too high, or, more specifically, as "expecting of a minor an understanding of a court proceeding that even an adult might be hard-pressed to have." It cited the brevity of her interview as further skewing the evaluation by depriving N.M. of the time he needed to digest and verbalize appropriate responses to her JACI-generated questions. A trier of fact need not accept the testimony of an expert witness, even if uncontradicted. (*Kennemur v. State of California* (1982) 133 Cal.App.3d 907, 923.)

The record leaves little reason to believe yet another psychological evaluation and further expert testimony would have tipped the evidentiary scales, so to speak, toward N.M.'s incompetence. The court satisfied its obligation to consider

7

defense counsel's request and exercised its discretion properly when it denied that request.  (See *In re L.W.* (2020) 44 Cal.App.5th 44, 51, internal quotes omitted ["To show abuse of discretion, the appellant must demonstrate the juvenile court exercised its discretion in an arbitrary, capricious or patently absurd manner . . ."].)

### *3. Allegations of Assault and Criminal Threats*

The juvenile court found "true" the amended petition's allegations that N.M. committed assault by means of force likely to produce great bodily injury and made criminal threats.  Again, we review its findings for substantial evidence.  (*In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1371.)  "Even if different inferences can reasonably be drawn from the evidence, we cannot substitute our own inferences or deductions for those of the trial court."  (*Id.* at p. 1373.)  Our review "begins and ends with a determination of whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted, which will support the decision of the trier of fact.  [Citations.]"  (*Ibid.*)

Deputy Ordaz testified in detail about the account each witness provided when he arrived on scene.  K.F. recalled N.M. choking her hard enough to block her breathing for 20 seconds.  Later he picked her up and "slammed" her to the ground.  K.F.'s mother told the deputy that her daughter gave the same account the day of the attack.  We consider this evidence sufficient to sustain the juvenile court's finding beyond a reasonable doubt that N.M. assaulted K.F. by means of force likely to produce great bodily injury.  Either act could have gravely injured or even killed K.F.  (See *People v. Armstrong* (1992) 8 Cal. App. 4th 1060, 1066, citing *People v. Covino* (1980) 100 Cal.App.3d 660, 667 ["Great

bodily injury is bodily injury which is significant or substantial, not insignificant, trivial or moderate"].)

The record contains substantial evidence of N.M.'s criminal threats as well. Deputy Ordaz recounted his conversation with K.F. about N.M.'s threat to shoot her brothers and her if she reported the assault. N.M.'s mother corroborated this account when she confirmed one of the responding deputies asked to search the garage for suspected weapons. In addition, K.F.'s mother testified how N.M. made a similar threat toward her husband when they arrived at N.M.'s mother's home to pick up their daughter. Any conflict in the evidence created when later K.F. recanted her account of the incident was for the juvenile court to resolve. (*In re Ryan N.*, *supra*, 92 Cal.App.4th at pp. 1372-1373.)

## DISPOSITION

The juvenile court's dispositional order sustaining counts 1 and 3 of the amended 602 petition is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.

We concur:


GILBERT, P. J.


YEGAN, J.

9

Hon. William A. Crowfoot, Judge
Superior Court County of Los Angeles

_____

Laini Millar Melnick, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Michael R. Johnsen, Supervising Deputy Attorney General, and David W. Williams, Deputy Attorney General, for Plaintiff and Respondent.