Filed 4/3/23 P. v. Dyess CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C096342 |
| Plaintiff and Respondent, | (Super. Ct. No. 21FE015539) |
| v. | |
| SIRMICHAEL DYESS, | |
| Defendant and Appellant. | |

A jury found defendant Sirmichael Dyess[1] guilty of assault with a deadly weapon and battery. The trial court sentenced defendant to seven years in prison. Appointed counsel filed an opening brief that sets forth the facts and procedural history of the case and requests this court to review the record and determine whether there are any arguable issues on appeal. (*People v. Wende* (1979) 25 Cal.3d 436.)

---

[1] Defendant's name is inconsistent throughout the record. The notice of appeal and felony complaint deemed information list defendant's name as "Sirmichael Alexander Dyess," while the abstract of judgment lists "Sirmichael Dyess." We use the latter name in this appeal.

1

Defendant filed a supplemental brief raising several issues. He contends the evidence is insufficient to prove he committed assault with a deadly weapon, battery, or inflicted great bodily injury; or to prove the absence of self-defense. Defendant argues the trial court erred when it did not provide him with a new attorney when he asked that his existing public defender be removed. Finally, defendant also argues the prosecutor committed prosecutorial misconduct and the trial court committed judicial misconduct by allowing this to happen. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I

*Pretrial*

Defendant was charged with assault with a deadly weapon—a cobblestone or rock[2]—and battery on the victim. It also alleged an enhancement that defendant personally inflicted great bodily injury on the victim as to count one. As to count two, the information further alleged the enhancements the victim was not an accomplice and that defendant personally inflicted serious bodily injury on the victim. The information alleged four separate circumstances in aggravation.

Prior to trial, defendant's counsel told the court defendant wanted a different attorney. In response, the trial court held an in camera hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118. At that hearing, defendant argued his attorney did not utilize his mental health disabilities as a defense in his case; was on bad terms with his family; had not provided him with discovery quickly enough; had not told him of any types of plea agreements (although he mentioned counsel told him alternatively his exposure was either 45 years to life in prison or 12 years); and moved for a speedy trial

---

[2]     Despite the differing characterizations of the item used by defendant to hit the victim in the head ("cobble," "cobblestone," or "rock"), for clarity, we will refer to this as a rock.

that he did not request. Defendant further argued that he was confused about the maximum sentence he faced. In response to questioning from the trial court, counsel set forth his 16 years of legal experience on the record and stated he had a disagreement with defendant's father, but he had a good relationship with defendant's mother, with whom he communicated with regularly. As far as discovery, he provided it when defendant requested it. Counsel shared he had not told defendant he was exposed to 45 years to life in prison, although the crimes originally charged included attempted murder. Counsel stated the case was set for trial within 60 days after the preliminary examination and defendant had suggested arguments counsel chose not to pursue. Defense counsel was prepared to try the case. The trial court denied this motion.

## II

### *Trial*

#### A

##### *C.B.'s Testimony*

On the night of the incident, C.B. went to a bar around 6:00 p.m. or 7:00 p.m., hung out with a friend, and watched sports. After he drank five or six alcoholic beverages, he left the bar for home via light rail. He did not remember anything that happened after he left the bar, including defendant assaulting him.

The next thing C.B. remembered was waking up at the hospital. His head and leg hurt, and his knee was swollen. C.B. identified photographs depicting his injuries and testified he suffered a broken nose, broken orbital bones, and a subdural hematoma. C.B.'s treating radiologist testified C.B. had an intercranial bleed on his brain from a trauma. C.B. also had soft tissue swelling and multiple fractures of his right orbital bones, nasal bones, and anterior maxilla bone.

At trial, the victim, C.B. denied knowing defendant, having any prior arguments or physical altercations with him, or having any gambling debts.

## B

*Video Evidence*

The prosecution presented the jury with videos of the assault and photographs taken that night.

While the videos did not show the entire altercation between defendant and C.B., the videos show defendant's arrival at the light rail station, some of the interactions between defendant and C.B., and defendant fleeing from the scene of the crime. One video shows defendant and C.B. interacting just prior to the time defendant threw the victim to the ground. Defendant walks in front of C.B., who appears to be trying to avoid defendant. While there is no sound, C.B. makes no aggressive movements towards defendant nor does he appear to say anything. At this point, the video shows C.B. had no cuts or bruises to his face or head.

A second video shows the altercation from another camera angle, but much of the assault is blocked by a large tree. This video shows defendant arriving at the station. After the train arrives, the video shows C.B.'s head hit the ground and defendant stomping on him with his feet. The video also shows the three women, whose testimony we will describe, *post*, arrive just prior to the assault at a vantage point from which they had a clear view of the altercation. Finally, the video shows defendant leaving the assault approximately two minutes after he arrived.

Two other videos show C.B. lying on the ground in a pool of blood, bleeding from his head.

## C

*Eyewitnesses*

On the evening of the assault, J.B. and two of her friends were riding scooters in downtown. J.B. saw an altercation from about 20 feet away between a bald man with no shirt and another man. When she arrived on the scene, the bald man was shouting at the other man in an aggressive tone. J.B. saw the bald man punch the other man in the face

4

and push him to the floor. Then, she saw the bald man beat up the victim, stomp on him, and hit him with a rock and punch him in the head. She saw the bald man hit the victim in the face with the rock several times. J.B. did not see the victim defend himself or punch or kick the attacker at any time. She and her friends turned away and crossed to the other side of the street, and she called 911. As the bald man ran from the scene, J.B. testified she saw him picking up more rocks and throwing them at cars. She did not identify defendant as the assailant at trial.

J.B.'s friend, T.M., testified she saw defendant and another man involved in an altercation. She saw defendant push the other man off the light rail car, stomp the victim's face into the concrete, and punch him in the face. She did not see the victim defend himself, push, punch, or kick defendant prior to being thrown to the ground. She did not see a rock in defendant's hand. But, she heard defendant throwing rocks at windshields of cars as he left the scene.

The third member of the scooter-riding trio, J.M., also testified. J.M. saw the victim fall to the ground from the light rail car. The attacker punched the victim in the face, stomped on his face, and grabbed an object and hit the victim in the face with it. She did not know what the object was. She did not see the victim punch the attacker, kick him, or fight back. She saw the attacker punch a truck, throw a rock at it, and then run off. She did not recognize defendant in the courtroom as the attacker.

D

*Police Encounter and Defendant's Statement*

The next day, officers detained defendant. The prosecution played the video of defendant answering a detective's questions. In that video, defendant said he had known the victim for a couple months and was involved in a fight with him the prior night over a gambling debt. While defendant did not know the victim's name, defendant claimed to have recently spent an evening gambling, drinking, and smoking with the victim. Defendant also claimed C.B. and a friend had previously assaulted him.

5

Defendant said C.B. owed him money and when he asked for it, C.B. told him he would not pay him and tried to walk around defendant. Defendant said he responded by punching C.B. in the chin and when he fell down, defendant kicked him in the face and neck three or four times. Defendant then stomped C.B. and claimed to have hit C.B. in the leg with a rock. Defendant specifically denied hitting C.B. in the head with the rock. Defendant claimed to have thrown the rock away after the assault. The detective was unable to find a rock at the scene of the crime the next day.

E

*Defendant's Testimony*

Defendant testified on his own behalf. He showed the jury photographs of C.B. in the hospital after the wounds on his face were cleaned and asserted the wounds were healed at that time. He also played the prosecution's surveillance video of the incident. He narrated the video asserting after C.B. was on the ground, no one came off the train. He narrated his interpretation of the video as showing the kicks to C.B.'s head were from only six to seven inches off the ground and nothing on the video showed a "rock being hit in [*sic*] someone's head." Defendant also showed other videos where he claims C.B.'s head moved several times after the altercation demonstrating he did not lose consciousness from the assault, but rather was under the influence of the alcohol he drank that night. He also noted several people walked by and did not offer to help C.B.

On cross-examination, defendant asserted C.B. owed him a gambling debt, but he "prefer[red] not to go into detail" about it. He also repeatedly testified he did not remember the incident and the only things he knew about that night were what he saw on the videos presented in court. He did not remember stomping on C.B.'s head or running away from the scene. Defendant agreed he made a statement to the police, but did not presently recall that he gave the statement or any of the specific admissions he made in that statement. For example, he did not recall he told the detective he hit C.B. with a rock. He did not recall a prior incident where he claimed the victim, C.B., and his friend,

6

assaulted defendant. Defendant repeated his opinion no one saw a rock that evening or anyone being hit with one. Further, he postulated he did not know whether C.B. had a black eye or bruised knee before the altercation. Because part of the action happened behind a tree, defendant testified C.B. "could have spit on [him] and beat [him] up. It could have been self-defense." When asked if this was his defense, defendant said, "[T]hat's potentially what it is to me. Based off these statements that you say I gave, I was high. I don't know. I don't recall anything. I just don't."

F

*Verdict and Sentence*

The jury found defendant guilty on both counts and found the enhancements and all pled circumstances in aggravation true. The trial court heard and denied defendant's multiple posttrial motions.

The trial court sentenced defendant to the upper term of four years for assault with a deadly weapon and a consecutive three-year term for the great bodily injury enhancement. Pursuant to Penal Code[3] section 654, the trial court stayed the sentence on battery and its enhancement.

Defendant timely appealed.

DISCUSSION

Defendant's supplemental brief challenges the sufficiency of the evidence for his convictions, argues the trial court erred when it failed to provide him with a new attorney, and contends he should have been granted a new trial based on prosecutorial and judicial misconduct. We disagree.

---

[3]     Undesignated statutory references are to the Penal Code.

# I

## *Sufficiency of the Evidence*

Defendant asserts the evidence is insufficient to prove he committed the crime of assault with a deadly weapon because the rock he used was not shown on the video or found later. He also argues there is insufficient evidence to prove he inflicted great bodily injury on the victim. He further argues there is no evidence he committed the crime of battery on C.B. He further argues there is no substantial evidence he did not engage in self-defense, arguing he responded to C.B. spitting on him and calling him the "N"-word. We reject these arguments.

"In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we 'examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Guerra* (2006) 37 Cal.4th 1067, 1129.) " 'Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder.' " (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

The trial court instructed the jury as follows: "To prove that the defendant is guilty of [the] crime [of assault with a deadly weapon], the People must prove that [(1)] the defendant did an act with a deadly weapon other than a firearm that by its nature would directly and probably result in the application of force to [the victim]; [(2)] the defendant did that act willfully; [(3)] when the defendant acted, he was aware of facts that

8

would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; [(4)] when the defendant acted, he had the present ability to apply force with a deadly weapon other than a firearm to [the victim]; and [(5)] the defendant did not act in self-defense." (CALCRIM No. 875.)

Defendant argues he did not assault C.B. with a deadly weapon because the act of hitting C.B. in the face with a rock is not shown on camera and no one found the rock. He suggests the weapon "was never proven to be more th[a]n a balled up hat." We reject this argument as the overwhelming evidence was defendant used a rock to hit C.B. in the head.

First, defendant told the detective that he used a rock or some other object to hit C.B and that he threw it away. Second, one witness testified she saw defendant hit C.B. in the head with a rock several times. A second witness said she saw defendant grab an object from under the light rail and hit C.B. in the face with it. Third, all three witnesses saw or heard defendant throwing rocks at cars as he left the scene. This is substantial evidence he used a rock or some other object to assault C.B.

We reject defendant's repeated arguments the witnesses who saw him hit C.B. with a rock were not credible. Where "disputed questions of fact were thus presented, . . . it was solely within the province of the jury to determine as to the credibility of the witnesses, and as to the truth or falsity of the evidence." (*People v. Barton* (1925) 72 Cal.App. 421, 423.) We will not disturb their conclusions on appeal.

We further reject defendant's argument there is not substantial evidence defendant did not act in self-defense.

In order to have the right to engage in self-defense, defendant must have reasonably believed he was in imminent danger of suffering bodily injury or was in imminent danger of being touched unlawfully and must have reasonably believed the immediate use of force was necessary to defend against that danger. (CALCRIM No. 3470.) The jury was properly instructed on this defense.

9

Substantial evidence supports the jury's finding defendant did not act in self-defense. Defendant's own words demonstrate he was not acting in self-defense when he punched C.B. His first comment to the detective was this was "merely" a fight between two men. Then he told the detective, the victim told defendant he would not pay and tried to walk around defendant, so defendant responded by punching, kicking, and striking him with a rock. Defendant's own words are substantial evidence he was not acting in self-defense and he did not actually or reasonably believe he was in imminent danger of anything, or that force was necessary to defend against that danger.

Further, eyewitnesses stated they observed the altercation between the two men. They saw defendant hit C.B. They did not see C.B. hit defendant, kick defendant, or otherwise act aggressively towards him. Finally, the video of their interaction shows defendant as the aggressor and indicates C.B. was trying to avoid and get away from him. Substantial evidence supports the jury's finding defendant did not have the right to nor did he engage in self-defense.

Defendant repeatedly contends C.B. spit on him and called him the "N-word" immediately before defendant defended himself and thus, the prosecutor failed to prove he was not acting in self-defense when he assaulted C.B. There was no evidence admitted at trial supporting this theory. For his part, C.B. did not remember what happened after he left the bar. Similarly, defendant repeatedly testified he did not recall what happened. Defendant's supposition, imagination, or speculation given on cross-examination, after having repeatedly stated he remembered nothing of that night other than what was caught on camera, does not rise to the level of evidence that might support this argument. (*People v. Grant* (2020) 57 Cal.App.5th 323, 330.)

Defendant argues there was no evidence he inflicted great bodily injury on C.B. and postulates C.B. may have had the injuries prior to the assault, or sustained them at the hands of the police after the altercation. We disagree.

"Great bodily injury is bodily injury [that] is significant or substantial; not insignificant, trivial or moderate." (*People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1066.)

Here, C.B. testified the assault left him with a broken nose, broken orbital bones, and a subdural hematoma. His treating radiologist testified C.B. had an intercranial bleed on his brain from a trauma, soft tissue swelling, and multiple fractures of his right orbital bones, nasal bones, and anterior maxilla bone. The prosecution also showed the jury photographs of the victim's injuries.

Further, the video evidence shows C.B's face and head were unmarked and without injury just prior to the encounter. Immediately after the encounter, the video and photographic evidence show C.B. on the ground, unconscious, and bleeding profusely from his head. The testimony, video, and photographs provide substantial evidence defendant inflicted great bodily injury on C.B.

Defendant also argues there is no evidence he assaulted defendant. As relevant here, the elements of assault as provided to the jury are: (1) "[T]he defendant willfully and unlawfully touched [the victim] in a harmful or offensive manner; [(2) the victim] suffered serious bodily injury as a result of the force used; and [(3) t]he defendant did not act in self-defense." (CALCRIM No. 925.)

As noted *ante*, the evidence on this point is overwhelming. Defendant admitted to hitting the victim in the face, stomping him with his foot, and hitting him with a rock. The video surveillance shows defendant stomping on the victim. The three eyewitnesses all testified defendant punched and kicked C.B. This is substantial evidence of assault.

## II

## Marsden *Motion*

Defendant argues he was not given a new attorney after he asked for his prior attorney to be removed. Defendant was not entitled to a new attorney.

11

"The law governing this area is well settled. 'When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance. [Citation.] A defendant is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citations].' " (*People v. Fierro* (1991) 1 Cal.4th 173, 204.)

We review the trial court's denial of a *Marsden* motion for an abuse of discretion. (*People v. Streeter* (2012) 54 Cal.4th 205, 230.) The court may properly deny the motion if the defendant, having been accorded the opportunity to speak, offers no hint of any factual grounds or reasons to support the request for new counsel. (*People v. Culton* (1979) 92 Cal.App.3d 113, 116.) "Denial is not an abuse of discretion 'unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel.' [Citation.]" (*People v. Taylor* (2010) 48 Cal.4th 574, 599.) To the extent there may be a credibility question between defendant and counsel at the *Marsden* hearing, the court is entitled to accept counsel's explanation. (*People v. Smith* (1993) 6 Cal.4th 684, 696.)

Here, the record demonstrates defendant asked for new counsel and expressed dissatisfaction with his current attorney. The trial court held an in camera hearing on the issues raised by defendant: His attorney had a conflict with his family; did not adequately explain things to him; failed to properly represent him; and failed to present a defense based on his mental health issues. The trial court found counsel was experienced and trying his best to handle the case, and carefully considered and appropriately declined to pursue the mental health as a defense. The trial court noted counsel was not required to get along with defendant's father and acknowledged it is sometimes difficult to

calculate the correct legal exposure. We have examined that transcript and conclude the trial court did not abuse its discretion in concluding defendant did not show either his counsel was engaged in inadequate representation or there was an irreconcilable conflict. The trial court properly denied this motion.

### III

### *Prosecutorial/Judicial Misconduct*

Defendant argues the prosecutor argued her opinions to the jury that were contrary to the evidence and the trial judge committed misconduct by allowing this. We disagree.

"A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury. Furthermore, and particularly pertinent here, when the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*People v. Morales* (2001) 25 Cal.4th 34, 44.) "At closing argument a party is entitled both to discuss the evidence and to comment on reasonable inferences that may be drawn therefrom." (*Ibid*.)

We have examined the prosecutor's closing argument. We conclude the arguments the prosecutor made were supported by the evidence admitted at trial and the law. Thus, there was no pattern of egregious conduct that infected the trial with unfairness. Defendant's disagreement with these arguments does not render those statements prosecutorial misconduct. Because there was no prosecutorial misconduct, the trial court did not engage in judicial misconduct in allowing the prosecutor's arguments.

13

## IV

## Wende *Review*

In addition to the specific arguments noted above, defendant raised generic points in his supplemental brief: He believes his trial was unfair; he should have been convicted of a lesser offense; counsel did not explain the trial to him; and his various posttrial motions should have been granted. We have undertaken an examination of the entire record pursuant to *Wende*, and we find no arguable errors that are favorable to defendant.[4]

## DISPOSITION

The judgment is affirmed.

/s/
ROBIE, Acting P. J.

We concur:

/s/
MAURO, J.

/s/
BOULWARE EURIE, J.

---

[4] Defendant also asserts he has been assaulted while in custody. To the extent defendant challenges the conditions of his current confinement, he must proceed via the appropriate filing in the Sacramento County Superior Court. These issues are not cognizable in this criminal appeal.