Filed 11/29/23  P. v. Sanchez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C097774 |
| Plaintiff and Respondent, | (Super. Ct. No. 22FE005026) |
| v. | |
| VALINTINO JOAQUIN SANCHEZ, | |
| Defendant and Appellant. | |

A jury found defendant Valintino Joaquin Sanchez guilty of discharging a firearm at an occupied motor vehicle, unlawful possession of a firearm by a felon, assault with force likely to produce great bodily injury, and assault with a firearm, and found true that he personally used a firearm when he committed the assault with a firearm.  The trial court thereafter found true a prior strike allegation and sentenced defendant to a prison term of 18 years.  Defendant appeals, arguing the prosecution presented insufficient evidence to support the conviction for assault with force likely to produce great bodily injury.  Defendant further contends the amended abstract of judgment contains two

1

clerical errors as to the date of sentencing and the number of presentence custody credits. We order the trial court to prepare a corrected amended abstract of judgment that reflects the correct sentencing date and presentence custody credits. We otherwise affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Given that defendant is challenging only the assault with force likely to produce great bodily injury conviction, we relay the facts with a focus on that offense.

Defendant and Veronica L. were in an on-again, off-again relationship. On March 22, 2022, Veronica and a friend drove to defendant's mother's house to retrieve various items. Veronica was pregnant at the time; defendant was the father. After returning home that night, Veronica called 911 to report an incident that occurred at defendant's mother's house. She told the operator defendant strangled her and then twice fired a gun at her car.[1] Veronica called 911 approximately 30 to 40 minutes after the incident. She said she was unharmed.

Sacramento Police Officer William Burton interviewed Veronica that evening. Officer Burton's body-worn camera captured the interview, which was played for the jury during defendant's trial. The video was not included in the record on appeal; we only have a transcript of the interview.

During the interview with Officer Burton, Veronica said defendant strangled her with two hands in response to something she said and she "couldn't breathe" for "[a] couple [of] seconds." She told Officer Burton, "And my—the stuff that fell out of my hand that I had left. So then I get back up, he's telling me to get back up off the ground, he grabs his stuff, when he grabs the stuff, he's trying to open the door to the car." When defendant opened Veronica's car door, he saw Veronica's friend inside. Defendant ran back towards the house to grab a bag. As Veronica was driving away, she saw defendant

---

[1] While Veronica drove the car that night, it was actually owned by her mother.

2

and his mother tussle for the bag and then heard two gunshots; her car was struck by a bullet or bullets.

During defendant's trial, Officer Burton testified crime scene investigators recovered a bullet that was lodged in the rear fender of Veronica's car, but they did not find any shell casings connected to the shooting. Although Officer Burton did not see any visible injuries to Veronica's neck or elsewhere on her body, he explained that victims of strangulation may not always exhibit visible injuries. Officer Burton testified that strangulation constitutes a very dangerous act that could seriously injure a person and could result in hospitalization.

Veronica testified at defendant's trial. She acknowledged she retrieved items from defendant's mother's house on March 22, 2022, but testified she could not remember much else about that night because she was under the influence of painkillers. She also contradicted herself, first testifying she could not remember if defendant arrived at the house that night and then stating she did not see defendant at all that day. Veronica testified defendant never hurt her, and she could not remember calling 911 or speaking to police officers about the incident. She further testified she told defendant's private investigator that she lied to the police because she was mad at defendant. Veronica acknowledged, however, that she obtained a restraining order against defendant following the incident and that the reason listed on the order was because defendant "tried to harm [her]."

Sacramento Police Officer Zachary Finley testified regarding a phone interview he had with Veronica, during which Veronica asked whether the police could serve defendant with the restraining order. She told Officer Finley that she would not be going to work that night because, given she works nighttime shifts, she was scared. The interview was captured on Officer Finley's body-worn camera and played for the jury. The video was not included in the record on appeal; we only have a transcript of the recording.

3

Defendant testified in his own defense. He admitted to arguing with Veronica at his mother's house on March 22, 2022, but denied that he strangled her or fired a gun at her car. Defendant said he confronted Veronica about her drug use outside the home and that she responded by threatening to take sole custody of their child. Although he testified the conversation did not upset him, he acknowledged that he sent Veronica an instant message the day after the incident, wherein he wrote, in part, "I genuinely apologize for anything I've ever [done to] hurt you. Last night was my last [straw] for me. I'm checking myself in [*sic*] the morning to get some help. I love you and [our son], but I can't keep putting you guys in harm's way because of my mental state." Defendant explained he sent the instant message only to "soothe her ego" in order "[t]o be a part of [his] son's life."

The jury found defendant guilty on all charges and found true he personally used a firearm when he committed the assault with a firearm. The trial court further found true a prior strike allegation. Defendant appeals.

DISCUSSION

I

*Substantial Evidence Supports The Assault With Force*

*Likely To Produce Great Bodily Injury Verdict*

Defendant contends we must reverse his conviction of assault with force likely to produce great bodily injury because there is insufficient evidence to support a finding that he strangled Veronica with sufficient force to produce great bodily injury. Defendant draws particular attention to the assertedly short duration within which he strangled Veronica and the absence of physical injuries. Defendant's arguments have no merit.

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the

4

defendant guilty beyond a reasonable doubt.' [Citation.] We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Avila* (2009) 46 Cal.4th 680, 701.)

Penal Code section 245, subdivision (a)(4) prohibits an assault upon another person "by any means of force likely to produce great bodily injury." "Great bodily injury is bodily injury [that] is significant or substantial, not insignificant, trivial or moderate." (*People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1066; see also CALJIC 9.02.) A finding that force was likely to produce great bodily injury concerns itself " 'not [with] whether serious injury *was* caused, but whether *the force used was such as would be likely to cause it.*' " (*People v. Duke* (1985) 174 Cal.App.3d 296, 302 (*Duke*), some italics added; see also *Armstrong*, at p. 1065 [physical injury is probative, but not required].) "Whether [force] would be likely to cause great bodily injury is to be determined by the force of the impact, the manner in which it was used and the circumstances under which the force was applied." (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 748-749.)

Defendant seeks to analogize to *Duke* to no avail. In *Duke*, the defendant placed a woman in a headlock while he grabbed her breast. (*Duke*, *supra*, 174 Cal.App.3d at pp. 299, 302.) The woman "screamed, got loose, and ran away." (*Ibid.*) The woman reported "[t]he headlock made her feel 'choked,' " but that it did not cause her to stop breathing. (*Id.* at p. 302.) She suffered a cut that was caused by her earring pushing against her ear. (*Ibid.*) The Court of Appeal "conclude[d] that a reasonable jury could not find beyond a reasonable doubt that the headlock . . . constituted force likely to produce great bodily injury," reasoning that the defendant "only grabbed her momentarily

5

and released her almost immediately" and thus "[s]he was in no danger from the force actually exerted on her body." (*Id.* at p. 303.)

The headlock in *Duke* is distinguishable from the strangulation in this case. Using two hands, defendant strangled Veronica, who was pregnant, with enough force to cut off her breathing; the force also caused her to drop the belongings she was carrying. Veronica further testified defendant told her to "get back up off the ground" and then she "got back up," which a reasonable jury could have inferred to mean that the strangulation caused Veronica to fall to the ground. (*People v. Mumin* (2023) 15 Cal.5th 176, 202 [jury is authorized to make logical and reasonable deductions from evidence].) The headlock in *Duke* did not cause the victim to stop breathing; in fact, she was able to scream and escape the defendant's grasp. (*Duke*, *supra*, 174 Cal.App.3d at p. 302.) The evidence in this case shows defendant used greater force than the force used by the defendant in *Duke*.

Defendant also contends the short duration of the strangulation is similar to the headlock in *Duke* because the victim in *Duke* was held " 'momentarily and released . . . almost immediately.' " (Quoting *Duke*, *supra*, 174 Cal.App.3d at p. 303.) We disagree. Initially, we note Veronica never testified or provided information as to the length of time defendant strangled her. She stated only that she could not breathe for "[a] couple [of] seconds," not that the entire duration of the strangulation spanned that length of time. From that, a reasonable jury could infer defendant strangled her for *at least* "[a] couple [of] seconds," but maybe more. But even so, a finding of great bodily injury centers not on the duration of the impact, but on "the force of the impact, the manner in which it was used and the circumstances under which the force was applied." (*People v. McDaniel*, *supra*, 159 Cal.App.4th at p. 749.) Here, a reasonable jury could have found the circumstances surrounding the impact—a disgruntled man whose ex-girlfriend threatened to take sole custody of their son, who grabbed his pregnant ex-girlfriend's neck with both hands, cutting off her breathing and causing her to drop items in her hands, and plausibly

6

fall to the ground—were sufficient to show the force used by defendant would be likely to produce great bodily injury. (See *ibid.*; *Duke*, at p. 302.)

Defendant further alludes to Veronica's lack of visible physical injuries as proof that defendant's conduct was not likely to produce great bodily injury. But, while the existence of physical injury may be probative in finding force was likely to produce great bodily injury, it is not required. (*People v. Armstrong*, *supra*, 8 Cal.App.4th at p. 1065.) Rather, the trier of fact must focus on " 'whether the force used was such as would be *likely* to cause [great bodily injury]." (*Duke*, *supra*, 174 Cal.App.3d at p. 302, italics omitted & added; see also *People v. Drayton* (2019) 42 Cal.App.5th 612, 618-619 ["we assess the 'potential harm in light of the evidence' "].) Here, a reasonable jury could have found the strangulation occurred with force likely to produce great bodily injury, notwithstanding that the force used did not actually produce visible physical injuries to Veronica.

Defendant next contends Officer Burton's general testimony about strangulation constituted the *only* evidence that the strangulation in this case was likely to produce great bodily injury to Veronica, and as such, it constituted insufficient evidence to support a conviction. Defendant's argument again lacks merit.

In addition to the evidence discussed *ante* related to Veronica's description of the strangulation during the 911 call and her interview with Officer Burton, other evidence exists in the record that a reasonable jury could have relied on in determining the level of force defendant used when he strangled Veronica. Veronica testified she filed for a restraining order against defendant following the incident and that she sought the order because "he tried to harm [her]." She told Officer Finley that she did not feel safe enough to work a nighttime shift before the restraining order was in place. Defendant further sent Veronica an apology message the day after the incident, in which he stated his "mental state" put her and their son "in harm's way." And a reasonable jury could

7

have understood from Officer Burton's testimony that strangulation is a dangerous act that can seriously injure someone, possibly to the point of requiring hospitalization.

We thus conclude there was sufficient evidence to substantiate the assault with force likely to produce great bodily injury verdict.

II

*The Amended Abstract Of Judgment Must*

*Be Corrected To Correct Clerical Errors*

Defendant argues, and the People concede, that defendant's amended abstract of judgment contains two errors, i.e., the date of sentencing and the number of presentence custody credits. We accept the People's concessions.

Appellate courts possess the inherent power to order the correction of clerical errors. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) Abstracts of judgment constitute written summaries of judicial proceedings, but their language is not controlling; it is the oral pronouncement of judgment that controls. (*Ibid.*)

The amended abstract of judgment lists the date of sentencing as December 16, 2022, but sentencing occurred on January 5, 2023. Furthermore, the amended abstract of judgment indicates defendant had 268 actual custody credits. However, defendant was awarded 287 actual credits and 43 conduct credits at sentencing, totaling 330 days. These are both clerical errors that require correction.

8

## DISPOSITION

The trial court is directed to prepare a corrected amended abstract of judgment providing defendant's sentencing occurred on January 5, 2023, and that he was awarded presentence custody credits totaling 330 days. The corrected amended abstract of judgment shall be forwarded to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

/s/
ROBIE, Acting P. J.

We concur:

/s/
KRAUSE, J.

/s/
WISEMAN, J.*

---

\*      Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.