Filed 1/22/25  P. v. Flores CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D082656 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD290664) |
| JORGE HUMBERTO FLORES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Albert T. Harutunian III, Judge.  Affirmed.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, A. Natasha Cortina and Liz Sulaiman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Jorge Humberto Flores of battery with serious bodily injury (Pen. Code,[1] § 243, subd. (d); count 1) and assault by means likely to

---

[1]     Undesignated statutory references are to the Penal Code.

produce great bodily injury against victim N.M. (§ 245, subd. (a)(4); count 3) and of the same charges against victim L.Z. (counts 2 and 4). It found true great bodily injury enhancement allegations as to each count under section 1192.7, subdivision (c)(8) and, as to the two assault counts, 12022.7, subdivision (a). Flores admitted he suffered a strike prior conviction (§§ 245, subd. (a), 1192.7, subd. (c)(24), 667, subds. (b)-(i), 1170.12, 668).

The court sentenced Flores to seven years in state prison: two years on the count 4 assault conviction of L.Z. (principal term) and three years for its section 12022.7, subdivision (a) enhancement, plus one year on the assault conviction of N.M., and another year on the remaining section 12022.7, subdivision (a) enhancement. The court stayed the sentence on the other counts and enhancements under section 654.

Flores contends: (1) there was insufficient evidence he used force likely to produce great bodily injury as to the count 3 conviction involving N.M.; and (2) under section 1385, the court erroneously failed to dismiss the two section 12022.7, subdivision (a) enhancements. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2021, shortly after N.M. left a downtown San Diego restaurant and bar, a man later identified as Flores ran up to her and punched her in the face with a closed fist. When her friend, L.Z., ran toward her, Flores also punched her face with a closed fist.

N.M. was taken to the emergency room, where she received three stitches on her lower lip. Approximately one third of her tooth was chipped off, requiring a filling to restore it. The entire bottom half of her face and her jaw was dislocated. She testified that even at the time of trial, "every time I try to eat, try to talk, I have—there's a crack in my jaw."

L.Z.'s front right tooth was chipped and it took approximately three to four weeks for it to be repaired. Her nose, which was fractured and swollen, bled for days after the incident. Her bruised eye took two weeks to heal. L.Z. experienced a panic attack that prohibited her from walking for a week, and disabled her from leaving her house or driving. She went to therapy for PTSD, and could not attend her professional commitments that were held at night as she was scared to be outdoors. She testified that she still suffered from anxiety, requiring her to take anti-anxiety medication. She also had occasional migraines.

*Defense Case*

Flores's fiancé, I.M., testified that when she and Flores left the restaurant and bar, there was a fight going on outside. Three men beat up Flores. I.M. was knocked to the ground and temporarily lost consciousness. I.M. did not witness Flores punch or assault anyone.

DISCUSSION

I. *Sufficiency of the Evidence Claim*

Flores contends insufficient evidence supported his conviction for assault likely to produce great bodily injury on N.M. But he acknowledges he "punched [her] one time in the face. . . . She was awake and never lost consciousness. . . . [A law enforcement officer] found that she was very intoxicated. . . . [She] was in the hospital for only a couple of hours and was released. . . . [She] had a chipped tooth and received three stitches that were dissolvable; she did not require any further medical treatment. . . . [She] had pain on the bottom of her face after the incident. . . . [She] currently has a type of jaw dislocation that includes a crack when she speaks or eats."

Flores supports his contention by relying on this statement by the trial court when it was deciding whether to instruct the jury on the lesser included

3

offense of simple assault as to counts three and four: "I think a juror could feel that a single punch would not be likely to produce great bodily injury. It could, but it's not likely to, in a juror's mind. They could feel that way and, therefore, I'm required to give it." According to Flores, the court also suggested that N.M.'s injury did not necessarily rise to the level of great bodily injury because when it selected count 4 as the principal term it stated, "[I]n my view, the victim on count 4 [L.Z.] has had the most significant harm, and in recognition of that, . . . I think count 4 should be the principal term to recognize the victim in that count[.]"

A. *Standard of Review and Applicable Law*

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Powell* (2018) 5 Cal.5th 921, 944.) "In applying this test, we . . . presume in support of the judgment the existence of every fact the [trier of fact] could reasonably have deduced from the evidence." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) "We 'must accept logical inferences that the [trier of fact] might have drawn from the circumstantial evidence.' " (*Ibid.*) " 'We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the [trier of fact]'s verdict." (*Ibid.*) "However, '[a] reasonable inference . . . "may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work. [¶] . . . A finding of fact must be an

4

inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence." ' " (*People v. Davis* (2013) 57 Cal.4th 353, 360.)

To prove a violation of section 245, subdivision (a)(4), the prosecution must establish that a person was assaulted and that the assault was committed by means of force likely to produce great bodily injury. (*In re Jose R.* (1982) 137 Cal.App.3d 269, 275.) Because the focus of the statute is on "force *likely* to produce great bodily injury, whether the victim in fact suffers any harm is immaterial." (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028.) "Likely" is one of the key words here, and "[w]hether a force is *likely* to produce great bodily injury is essentially a question of fact for the trier of fact." (*In re Jose R.*, at p. 277, italics added.) The other key element is that of great bodily injury, which is bodily injury that is substantial or significant, "not insignificant, trivial or moderate." (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 748.) The focus of the great bodily injury portion of the offense is on the amount of force "actually used" by the defendant, not "the force that the [defendant] could have used against the victim." (*People v. Duke* (1985) 174 Cal.App.3d 296, 303, italics omitted.)

B. *Analysis*

Despite Flores's various attempts to minimize the seriousness of his assaultive conduct, we find no merit in any of his arguments. As stated, the focus is not on what injuries N.M. actually suffered, but instead on Flores's actual application of force and its "likely" effects according to the jury. (*In re Jose R.*, *supra*, 137 Cal.App.3d at p. 277.) It is well-established "[t]hat the use of hands or fists alone may support a conviction of assault 'by means of force likely to produce great bodily injury.' " (*People v. Aguilar*, *supra*, 16 Cal.4th at p. 1028; see *People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1066.)

5

N.M.'s testimony provided substantial evidence that the force Flores used was likely to, and did, cause significant injury to her face. (See *In re Nirran W.* (1989) 207 Cal.App.3d 1157, 1161-1162 [a single blow to a victim's face may constitute force likely to produce great bodily injury]; *People v. White* (1961) 195 Cal.App.2d 389, 392 [a single blow to the eye "delivered with great force" supported charge of assault by means of force likely to produce great bodily injury where "the assault was unprovoked and delivered at a time [the victim] was not prepared to protect himself"].) The force of Flores's punch knocked N.M. to the ground, causing her to temporarily lose consciousness. N.M. also chipped her teeth. "[T]he force required to loosen a tooth is greater than the force required to fracture a bone." (*People v. Medellin* (2020) 45 Cal.App.5th 519, 528.) Flores's punch also dislocated N.M.'s jaw, limiting her ability to talk and eat up to two years later, at the time of trial. These are not circumstances where no rational trier of fact could have found a section 245 violation.

Flores's reliance on *People v. Armstrong, supra,* 8 Cal.App.4th 1060 as involving a "vicious attack," unlike the incident here, is unavailing. The California Supreme Court has stated that reviewing sufficiency of evidence "necessarily calls for analysis of the unique facts and inferences present in each case" and therefore "comparisons between cases are of little value." (*People v. Rundle* (2008) 43 Cal.4th 76, 137-138.)

## II. *Section 12022.7 Enhancements and Section 1385*

Flores contends the trial court abused its discretion by declining to dismiss his two great bodily injury enhancements under section 12022.7, subdivision (a) despite the presence of the following mitigating factors: multiple enhancements are alleged in a single case (§ 1385, subd. (c)(2)(B)); the offense is connected to mental illness (§ 1385, subd. (c)(2)(D)); and the

6

offense is connected to prior victimization or childhood trauma (§ 1385, subd. (c)(2)(E)).

Flores also claims the court abused its discretion by failing to apply the correct legal standard, as it focused not on future harm to others but instead on past injuries to the victims. He further argues the court erroneously found him to be a danger to public safety, despite earlier allowing him to be out on his own recognizance while the matter was pending trial.

A. *Background*

At sentencing, the court granted Flores's motion under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 and struck his strike prior, which involved a 23-year-old conviction for domestic violence. It pointed out, "One significant factor is the age of the strike."

At the start of sentencing, the court explained its view: "Courts can't just impose sentences based on the impact on family and friends. That's not just. . . . It's not taking into consideration *the potential impact on the future* if the defendant is not appropriately punished for his prior conduct." (Italics added.) The court denied probation: "[Flores] has had anger control problems. He may also—and it seems that it's conceded that he's had substance abuse issues, but people have substance abuse issues without going around and engaging in violence, especially repeated acts of violence. And, you know, [Flores] not only has been granted probation previously, but he has . . . violated . . . probation and went to prison."

The court declined to strike the enhancements: "On count 4, the court is going to impose the low term of two years, and the court is going to impose the enhancement. I'm not striking the enhancement. The enhancement is there in recognition of the serious injuries and violence caused by the defendant, and it was serious and it has had a lasting effect on the victim. So

7

the court is imposing . . . the three-year consecutive on the [section 12022.7, subdivision (a)] enhancement on count 4. And turning to count 3, the court is, in recognition that it's—there's a separate victim with separate injuries caused by the defendant, he made a decision to attack another person. The court is going to impose one-third the mid-term, which is one year consecutive[.]" The court summarized: "It's I think a sentence that is appropriate considering all relevant factors, including [Flores's] background, his priors, and the significant harm he caused in the present case."

B. *Applicable Law*

Section 1385 provides that, with an exception not applicable here, a court "[n]otwithstanding any other law, . . . shall dismiss an enhancement if it is in the furtherance of justice to do so . . . ." (§ 1385, subd. (c)(1); see *People v. Walker* (2024) 16 Cal.5th 1024, 1033; *People v. Mendoza* (2023) 88 Cal.App.5th 287, 295.)

Section 1385 subdivision (c)(2) provides in part: "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of [nine listed] mitigating circumstances . . . are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."

We review for abuse of discretion the "court's determination that dismissal of [an] enhancement would endanger public safety." (*People v. Mendoza, supra,* 88 Cal.App.5th at p. 298.) Further, in assessing sentencing issues, we apply a presumption of regularity of judicial exercises of discretion.

(*People v. Mosley* (1997) 53 Cal.App.4th 489, 496.) It is Flores's burden in the face of those presumptions to affirmatively demonstrate error. (*People v. White Eagle* (1996) 48 Cal.App.4th 1511, 1523.)

C. *Analysis*

Flores concedes appellate courts have held that dismissal of enhancements under section 1385 is not mandatory, but argues a split of authority existed among the Courts of Appeal on the issue of whether the requirement that courts afford great weight to enumerated mitigating circumstances "creates a rebuttable presumption in favor of dismissing an enhancement unless the trial court finds dismissal would endanger public safety."

After Flores's briefing was concluded in this matter, the California Supreme Court resolved the split by rejecting the presumption argument, holding section 1385 does not create a rebuttable presumption in favor of dismissal but, rather, gives the court discretion to dismiss an enhancement when it is in the " 'furtherance of justice' " to do so. (*People v. Walker, supra,* 16 Cal.5th at p. 1033.) It explained, "[I]f the court does not find that dismissal would endanger public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*Walker*, 16 Cal.5th at p. 1029.) Because there is no rebuttable presumption, Flores does not come within the exception and his argument under section 1385 fails.

Here, the trial court acted well within its discretion in finding that dismissal of the two enhancements was not in the interest of justice and that

Flores would be a danger to public safety based on the nature of this crime and his criminal history. It made an implied finding Flores would be a danger to public safety based on his criminal history. The court pointed out Flores had anger control problems that often resulted in repeated acts of violence. It acknowledged Flores had received mental health and substance abuse treatment before he committed his offenses and expressed sympathy for someone who struggles with addiction and changes his life. However, it concluded there were other countervailing factors that made dismissal of the enhancements not in the interest of justice: "But [Flores] I think has had multiple opportunities to deal with problems that maybe stem from a primary basis of having a substance abuse issue, being put on probation, going through treatment, going to prison, and yet still choosing to go to a bar and put himself in harm's way considering he's got a problem." In sum, the court considered both Flores's past—his successful and unsuccessful attempts to address his violent tendencies and the reasons behind them— and the future danger he posed given his repeated inability to correct his behavior and the randomness of his attacks on the victims.

DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.

11