Filed 4/30/26  P. v. McClintic CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br><br>BRANDON LUNDY MCCLINTIC,<br><br>    Defendant and Appellant. | A172968<br><br>(Mendocino County<br>Super. Ct. No. 22CR02391) |

Defendant Brandon Lundy McClintic appeals from a judgment after a jury found him guilty of assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4))[1] and simple battery (§ 242), and found true the allegation that he personally inflicted great bodily injury in committing the assault (§ 12022.7, subd. (a)).  Defendant's sole contention is that the trial court used a flawed instruction in defining "great bodily injury" for the jury.  We disagree and therefore affirm.

**BACKGROUND**

**The Facts**

In early 2022, Oisin Folsom discovered that his girlfriend was having an affair with defendant, Folsom's friend of about eight years who himself

_____

[1]    Further undesignated statutory references are to the Penal Code.

1

was married.  Folsom learned about the affair after reading text messages between his girlfriend and defendant.  Folsom took screenshots of those texts and sent them to defendant's wife, who thereafter ended her marriage with defendant.

Defendant then started sending Folsom text messages threatening to "find" him and "kick [his] ass."  Defendant would also drive by Folsom on numerous occasions, stare at him, and yell out things like "fuck you" and that he was going to "kick [Folsom's] skull in."

At around 5:30 p.m. on April 26, 2022, Folsom was smoking a cigarette outside of a bar, when defendant drove by and stared at him.  After Folsom went back inside the bar, defendant walked up to him and threatened to "beat [him] up."  Folsom replied that he "was over it," that he "didn't care anymore and [defendant] won," and that defendant should "[g]o live [his] own life."  Defendant left the bar, after which Folsom left and went home.

At around 7:00 p.m., Folsom returned to the bar to meet with, and celebrate the birthday of, a friend.  When Folsom went outside to smoke a cigarette, defendant drove up to the bar, parked his car, got out, and told Folsom, " 'Put up your hands.  Let's go.  Let's fight.  I'm going to kick your ass.' "  Folsom told defendant to "[l]et it go" and "[m]ove on with [his] life."  Defendant, however, punched Folsom twice, once to his chin and once on the side of his head, which "knocked [Folsom] out cold."  Folsom fell and hit his head on the sidewalk in front of the bar.

Folsom testified he regained consciousness about four minutes later.  He felt dizzy and believed he had a concussion.  Folsom "was in a lot of pain," his head was "throbbing", and he was "bleeding profusely out of the back of [his] skull," which had split open.  Folsom tried to get back on his feet, but could not, so he crawled over to a nearby fence, grabbed it, and picked himself

2

up.  Folsom walked to the bathroom in the bar and placed paper towels on the back of his head.  He then called another friend to take him to the hospital, which his friend did.

Folsom was treated at the hospital.  He received staples on the back of his head and stitches on his lip.  He was also given ice for his face and chin. Folsom then went home, still in a lot of pain.

The next day, Folsom obtained surveillance videos from the bar.  The videos showed defendant attacking Folsom as he described, and additionally revealed that defendant punched Folsom a third time when he was on the ground.  The videos were played for the jury.

A few days after obtaining the surveillance videos, Folsom reported the incident to the police and gave them the videos.  The police took photographs of Folsom, which showed the laceration and staples on the back of his head and stitches to his lip.

**The Proceedings Below**

***The Charges***

On October 5, 2023, the Mendocino County District Attorney filed an information charging defendant with assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); count 1) and battery inflicting serious bodily injury (§ 243, subd. (d); count 2).  The information also alleged, as to both counts, enhancements based on the personal infliction of great bodily injury in the commission of a felony (§ 12022.7, subd. (a)).

***The Trial***

On July 9, 2024, a jury trial commenced.  After the close of evidence the next day, the parties and court discussed jury instructions.  The prosecutor noted that CALCRIM No. 3160 "is the specific instruction for great bodily [in]jury that applies to all statutes that include that term."  Defense counsel

3

did not object to instructing the jury using CALCRIM No. 3160 or otherwise argue it was ambiguous or incorrectly stated the law.

Instead, relying on *In re Cabrera* (2023) 14 Cal.5th 476 (*Cabrera*),[2] defense counsel argued that great bodily injury is "a higher standard" and "more severe injury" than serious bodily injury, and requested an instruction to that effect. The prosecutor disagreed, arguing that while *Cabrera* established that serious bodily injury and great bodily injury have different statutory definitions, it did not establish a "hierarchy" between the two standards.

The court agreed with the prosecutor. It declined to give the instruction requested by defense counsel, reasoning that "the jury

---

[2] In *Cabrera*, the jury found the defendant guilty of battery with serious bodily injury but was unable to reach a verdict on great bodily injury allegations. At sentencing, however, the trial court concluded that the battery with serious bodily injury qualified as a serious felony based on its own finding that the defendant inflicted great bodily injury. Our Supreme Court concluded that the trial court's factual finding violated the defendant's Sixth Amendment right to jury trial under *Apprendi v. New Jersey* (2000) 530 U.S. 466, because the jury's verdict of battery with serious bodily injury did not necessarily establish that he inflicted great bodily injury. (*Cabrera, supra*, 14 Cal.5th at pp. 483–489.) Although the high court acknowledged its own prior decisions observing that the two are essentially equivalent, it noted that they nevertheless have separate and distinct statutory definitions. (*Id.* at p. 483.) " ' " '[T]he statutory definition of great bodily injury does not include a list of qualifying injuries' " ' like the statutory definition of serious bodily injury does." (*Ibid.*) Specifically, "serious bodily injury" is defined as " 'a serious impairment of physical condition,' " including, but not limited to, the following: 'loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement.' " (*Id.* at p. 484, citing § 243, subd. (f)(4).) Great bodily injury is defined as "a significant or substantial physical injury" (§ 12022.7, subd. (f)), "and the standard jury instructions add only that great bodily injury 'is greater than minor or moderate harm' " (CALCRIM No. 3160). (*Cabrera,* at p. 484.)

instructions for each count . . . are sufficient in defining the applicable meaning of either great bodily [in]jury or serious bodily [in]jury" and that "to introduce this idea of a continuum that great bodily injury is somehow also a little bit more severe than serious bodily injury is an incorrect statement of the law." The court added, "the relevant instruction for each of the two counts talks about what level of injury is required. And that's a factual inquiry for the jurors to make. I don't think it clarifies anything to add the kind of instruction that Defense Counsel is asking for." The court then stated it would give CALCRIM Nos. 875 (assault with force likely to produce great bodily injury), 925 (battery causing serious injury), and 3160 (great bodily injury), which it explained was "the least confusing way to deal with it."

On July 11, the court read the jury instructions. Pursuant to CALCRIM No. 875, it instructed the jury on the elements of the crime of assault with force likely to produce great bodily injury charged in count 1. The instruction stated that the term "great bodily injury" was defined in another instruction to which the jury should refer.

As to the battery causing serious bodily injury charged in count 2, the court instructed the jury that "serious bodily injury means a serious impairment of physical condition. Such an injury may include loss of consciousness, concussion, bone fracture, protracted loss or impairment of function of any bodily member or organ, a wound requiring extensive suturing, and serious disfigurement." (CALCRIM No. 925.)

The jury was further instructed, both with respect to count 1 and the great bodily injury enhancements accompanying both counts 1 and 2, that "[g]reat bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm." (CALCRIM No. 3160.)

The court also instructed the jury on the lesser included offenses of counts 1 and 2, which were simple assault (§ 240) and simple battery (§ 242), respectively. (CALCRIM Nos. 915, 960.)

In closing argument, the prosecutor recited the definition for great bodily injury verbatim as stated in the instructions. Defense counsel argued at length that Folsom's injuries failed to meet the legal standards for great bodily injury and serious bodily injury.

Defense counsel then told the jury, "it's clear, at least to me, that great bodily injury is something more than serious bodily injury." The prosecutor objected on the ground that defense counsel misstated the law, and the trial court sustained the objection. Defense counsel then repeated the standard instruction for great bodily injury: "great bodily injury means it's significant or substantial physical injury. It is injury that is greater than minor or moderate harm."

In rebuttal, the prosecutor argued: "And [defense] Counsel made a big point of saying well, great bodily injury is—is somehow greater than serious. That is not what the law says. [¶] If you take a look at the law that was given to you by the Court, you will see that sentence nowhere. The definition of great bodily is 'a significant or substantial physical injury. It is . . . 'an injury greater than minor or moderate harm.'"

Following closing arguments, the court gave "a few more jury instructions," including CALCRIM No. 3517, the standard instruction that tells the jury how to consider a lesser included offense in conjunction with a greater offense and how to properly fill out the verdict forms:

"If all of you find that the defendant is not guilty of a greater charged crime, you may find him guilty of a lesser crime if you are convinced beyond a reasonable doubt that the defendant is guilty of that lesser crime.

6

"A defendant may not be convicted of both a greater and lesser crime for the same conduct. Now I will explain to you the crimes affected by this instruction.

"Simple assault, Penal Code section 240, is a lesser crime of assault with force likely to produce great bodily injury, Penal Code section 245(a)(4), charged in Count 1. Simple battery, PC 242, is a lesser crime of battery with serious bodily injury, PC 243(d), charged in count 2.

"It is up to you to decide the order in which you consider each crime and the relevant evidence. But I can accept a verdict of guilty of a lesser crime only if you have found the defendant not guilty of the corresponding greater crime. For any count in which a greater and lesser crime is charged, you will receive verdict forms of guilty and not guilty for the greater crime and also verdict forms of guilty and not guilty for the lesser crime.

"Follow these instructions before you give me any completed and signed final verdict form. Return any unused verdict forms to me unsigned.

"One, if all of you agree the People have proved that the defendant is guilty of a greater crime, complete and sign the verdict form for guilty of that crime. Do not complete or sign any other verdict form for that count.

"If all of you cannot agree whether the People have proved that the defendant is guilty of the greater crime, inform me only that you cannot reach an agreement, and do not complete or sign any verdict form for that count.

"If all of you agree that the People have not proved that the defendant is guilty of the greater crime, and you also agree that the People have proved that he is guilty of the lesser crime, complete and sign the verdict form for not guilty of the greater crime, and the verdict form for guilty of the lesser crime.

7

"If you all agree the People have not proved that the defendant is guilty of the greater or lesser crime, complete and sign the verdict form for not guilty of the greater crime and the verdict form for not guilty of the lesser crime.

"If all of you agree the People have not proved that the defendant is guilty of the greater crime, but all of you cannot agree on a verdict for the lesser crime, complete and sign the verdict form for not guilty of the greater crime, and inform me only that you cannot reach an agreement about the lesser crime."

During deliberations, the jury submitted a note to the court stating: "Our intention is that he is guilty of Battery & Assault. He is not guilty of serious bodily injury. He is guilty of Great Bodily injury. Do these forms reflect our intention correctly?"

In response, the court stated: "So, I've received the note, and it sounds to me like you're having some confusion on how to complete the verdict forms.

"And I don't want you to disclose . . . any potential verdict may be that you're considering. I'm first just going to go over how to fill out the verdict forms correctly.

"And then, I'm hopeful that with those instructions, you will be able to retire back to the jury room and complete the verdict form appropriately.

"I think the best way of approaching it is to look at the verdict forms for greater offenses first.

"So the greater offenses are Counts 1 and 2. Okay? Count 1 is the assault with a force likely to produce great bodily injury.

"If all of you agree on a verdict to that count, then you would fill in the appropriate verdict form for that count. So for example, if you all agree that the defendant was guilty of the assault by means of force likely to produce

8

great bodily injury, you all agree to that, you would fill out the guilty verdict form. And then you would have to decide whether or not the special allegation was true. And so then you would write guilty, and then you would write in true or false on the special allegation part of it.

"You then do not sign the not guilty verdict form for that count. And don't date it, and . . . you are done with that count.

"Okay. That's if you were to find him guilty.

"If you were to find not guilty, you would fill out the verdict form for Count 1 for not guilty and leave the guilty verdict form unsigned and undated.

"Do you understand that?

"FOREPERSON: Yes.

"THE COURT: Okay. If as to that Count 1, you found well, he's not guilty of the greater crime, but he is guilty of the lesser crime, if everyone agreed that he was guilty of the lesser crime, then you would fill out the verdict form for the lesser crime that applies to Count 1, and leave the not guilty verdict form for that lesser count unsigned and undated.

"Then you are done with that count. Okay? [¶] . . . [¶]

"Then turn to Count 2. All right? Count 2 is . . . battery with serious bodily injury.

"If . . . everyone agreed that he was guilty of that offense, then you just fill out the verdict form for guilty. And then you have to address the special allegation, whether or not it's true. And those two things are on the guilty verdict form. You would just those [*sic*] out, sign and date it, and leave the not guilty verdict form unsigned and undated.

"Conversely, if you all agree that he's not guilty of . . . battery with serious bodily injury, then you sign the not guilty verdict form and date it,

9

and leave the other one blank.

"If you all agree that he's not guilty of . . . the greater crime, the battery with serious bodily injury, but you think that he is guilty of the lesser crime of simple battery, then you would just fill out the verdict form for simple battery, leave the not guilty one unsigned, . . . but if you all agree that he was not guilty of the greater crime, not guilty of the lesser crime, you just fill out the verdict form for the not guilty of the lesser crime of simple battery.

"That's how you fill them out. . . . [Y]ou do have the instruction for 3517 in the jury instruction packet that kind of reiterates just what I said. And so I'm hopeful that with those instructions, you can go back and fill out the jury forms properly.

"I . . . just want to get the language right here.

"I can accept a verdict of guilty of a lesser crime only if you found the defendant not guilty of the corresponding greater crime.

"Do you understand that?

"So on . . . the two counts. Count 1 and Count 2, those are the greater crimes. Each one has a lesser crime. Okay?

"So you can't find someone guilty of one of the lesser crimes and guilty of the greater crime. Okay? You only address the lesser crime if you found him not guilty on the greater crime.

"And just deal with them one count at a time, and I think that should make the process easier to work through.

"So with those instructions, hopefully you will be able to work that out."

The jury resumed deliberations, after which it stated it had reached a verdict. When the verdict forms were handed to the court, it held a sidebar with counsel. Back on the record, the court announced:

"Ladies and gentlemen, the verdict as presented is defective. You

10

cannot have an inconsistent finding on the special allegation in the two counts. So I'm going to send you back to do some further consideration and decide what you want to do. But you cannot have inconsistent answers on that question for the two separate counts. [¶] . . . [I]f you make any changes, just strike them out and initial. The foreperson should initial them and make them clear." This exchange then occurred:

"A JUROR: Your Honor, may I speak? It's a little confusing.

"THE COURT: No, wait. No, no, sir.

"A JUROR: Okay. I'm sorry.

"THE COURT: We need to be very careful.

"A JUROR: All right.

"THE COURT: If you have a question, you can write it down . . . in the jury deliberation room, and hand it to the bailiff —

"A JUROR: Okay."

The jury resumed deliberations. Outside the presence of the jury, the prosecutor stated: "Your Honor, just to make a record, my understanding is that the Court took us back for a sidebar because the jurors provided different answers to the special allegations for Count 1 and Count 2, despite the fact the two counts had the same special allegation, that of personal infliction of great bodily injury. Thus, in essence, the jury said the defendant both did and did not inflict great bodily injury upon the defendant (sic), and the Court therefore instructed them to reach a consistent verdict on that; is that correct?" The court replied, "That's a correct statement of what happened."

Defense counsel then added: "And I would just state that the only way . . . that this could have possibly made sense to the jury is if they considered serious bodily injury to be worse than great bodily injury, and that great

11

bodily injury was basically a lesser that they didn't have to decide. And I think that's part of the confusion in the instructions."

Following a recess, the jury stated it had reached a verdict and handed the verdict forms to the bailiff. The court again held a sidebar with counsel. Afterwards, the court stated: "Ladies and gentlemen, the Court understands that there's some confusion on having to deal with the special allegations and the lesser included offenses. So I'm going to try and explain again to give you some more clarity.

"The special allegations in Count 1 and Count 2 are identical. You can't have inconsistent findings between those two counts for an identical special allegation.

"With respect to the lesser counts, . . . I can't accept a verdict of guilty on a lesser count if you have also found them guilty on . . . the corresponding greater charge. [¶] If there is a finding of guilt on a greater charge, you don't address the lesser offense. [¶] So I'm hopeful that with those instructions, you will be able to reach a proper verdict. [¶] And so Mr. Bailiff, I will provide the verdict forms to you. [¶] And . . . I'm hopeful that with those instructions, you will be able to come to a proper verdict."

### The Verdict and Sentence

Following another recess, the jury reached a valid verdict. As to count 1, the jury found defendant guilty of assault by means of force likely to produce great bodily injury, and found true the allegation that he inflicted great bodily injury. As to count 2, the jury found defendant not guilty of battery with serious bodily injury. It instead found defendant guilty of the lesser included offense of simple battery, a misdemeanor (to which the great bodily injury enhancement could not apply, since the enhancement applies

12

only when the infliction of great bodily injury occurs in the commission of a *felony* or *attempted felony* (§ 12022.7, subd. (a)).[3]

On January 27, 2025, the trial court suspended imposition of sentence and placed defendant on three years' probation subject to various conditions, including that he serve 210 days in county jail (with credit for two days served).

This appeal followed.

**DISCUSSION**

Defendant contends the trial court erred in instructing the jury using CALCRIM No. 3160 because the instruction ambiguously defined "great bodily injury." As a result, he contends the instruction permitted the jury to convict him of the aggravated assault and find true the great bodily injury enhancement allegations under alternative legal theories—one invalid (i.e., greater than minor harm) and the other valid (i.e., greater than both minor and moderate harm).

As an initial matter, the Attorney General argues defendant forfeited this claim because he did not object to CALCRIM No. 3160 or otherwise argue the instruction was ambiguous. As discussed, the argument defendant advanced below regarding jury instructions focused on the purported "hierarchy" between great bodily injury and serious bodily injury—i.e., whether great bodily injury was "a higher" legal standard or a "more severe

---

[3]     Defendant subsequently moved for a new trial, arguing the court should have granted his request to instruct the jury that great bodily injury is "more serious" than serious bodily injury, since, in his view, "not all SBI is necessary [*sic*] GBI but that all GBI would be SBI." Additionally and relatedly, defendant argued the jury's verdict—finding "that the injuries [defendant] inflicted did not constitute serious bodily injury but did constitute great bodily injury"—was inconsistent and "contrary to law and evidence." The court denied the motion.

13

injury" than serious bodily injury. This argument is different from the argument he now asserts on appeal, which is that the CALCRIM great bodily injury definition is on its own ambiguous.

Generally, the failure to object to an instruction forfeits a challenge to that instruction on appeal. (*People v. Virgil* (2011) 51 Cal.4th 1210, 1260.) However, the failure to object to instructional error will not result in forfeiture if the substantial rights of the defendant are affected. (§ 1259; *People v. Mitchell* (2019) 7 Cal.5th 561, 579.) Defendant contends the instruction allowed the jury to find great bodily injury on a legally invalid theory. If he were correct (as we explain, he is not), the error would have affected his substantial rights. Accordingly, the claim is not forfeited. (*Id.* at pp. 579–580.) We thus turn to the merits of defendant's claim—and ultimately conclude there was no error.

"The legal adequacy of an instruction is reviewed independently." (*People v. Cole* (2004) 33 Cal.4th 1158, 1210.) " 'It is fundamental that jurors are presumed to be intelligent and capable of understanding and applying the court's instructions.' [Citation.] When a defendant claims an instruction was subject to erroneous interpretation by the jury, he must demonstrate a reasonable likelihood that the jury misconstrued or misapplied the instruction in the manner asserted. [Citation.] In determining the correctness of jury instructions, we consider the entire charge of the court, in light of the trial record." (*People v. Covarrubias* (2016) 1 Cal.5th 838, 926.) We also consider the arguments of counsel in assessing the probable impact of the instruction on the jury. (*People v. Young* (2005) 34 Cal.4th 1149, 1202.) " 'Instructions should be interpreted . . . to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' " (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.)

14

"Great bodily injury is bodily injury which is significant or substantial, not insignificant, trivial or moderate." (*People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1066.) "[T]he injury need not be so grave as to cause the victim ' "permanent," "prolonged," or "protracted" ' bodily damage." (*People v. Cross* (2008) 45 Cal.4th 58, 64.)

As noted, using CALCRIM No. 3160, the trial court instructed the jury that "[g]reat bodily injury means significant or substantial physical injury. It is an injury that is greater than minor *or* moderate harm." (CALCRIM No. 3160, italics added.) Defendant argues that the disjunctive phrasing, "greater than minor *or* moderate harm," allowed the jury to convict him of the assault or find true the great bodily injury enhancements as long as it found the injury was only more than minor. As defendant notes, if a jury reached that understanding it would be wrong because "[g]reat bodily injury is bodily injury which is significant or substantial, not insignificant, trivial *or moderate*." (*People v. Armstrong*, *supra*, 8 Cal.App.4th at p. 1066, italics added.)

Defendant relies primarily on *People v. Medellin* (2020) 45 Cal.App.5th 519 (*Medellin*). In *Medellin*, the trial court instructed the jury with CALCRIM Nos. 875 and 3160, which define great bodily injury as " 'significant or substantial physical injury. It is an injury that is greater than minor or moderate harm.' " (*Medellin*, *supra*, 45 Cal.App.5th at p. 531.) The parties agreed that the prosecutor misstated the law during closing argument by expressly referring to the instructional language and then stating, "[A]n injury that is greater than minor. That is all I need to prove." (*Ibid*.) The question on appeal was whether the error was prejudicial. (*Id.* at p. 530.)

A divided panel of the Fifth District Court of Appeal concluded that the

error was prejudicial because there was a reasonable likelihood that the jury understood or applied the prosecutor's argument in an improper or erroneous manner. (*Medellin, supra*, 45 Cal.App.5th at p. 536.) In reaching that conclusion, the majority determined that the instructional language was ambiguous. According to the majority, " '[u]nder the plain language of the instruction, the jury could have convicted' [defendant] if they believed either greater than minor harm or greater than moderate harm was sufficient. [Citation.] 'The instruction's "use of the word 'or' . . . indicates an intention to use it disjunctively so as to designate alternative or separate categories." ' " (*Id.* at p. 534.) In the view of the majority, "the CALCRIM great bodily injury definition 'may impermissibly allow a jury to' find great bodily injury means greater than minor harm alone is sufficient." (*Id.* at p. 534.)

The concurring and dissenting justice disagreed with this analysis because she did not perceive any ambiguity in the instruction. (*Medellin, supra*, 45 Cal.App.5th p. 538 (conc. & dis. opn. of Detjen, J.).)

As defendant acknowledges, since *Medellin*, two different panels of the Fifth District Court of Appeal have revisited this issue in *People v. Quinonez* (2020) 46 Cal.App.5th 457 (*Quinonez*) and (*People v. Sandoval* (2020) 50 Cal.App.5th 357 (*Sandoval*), concluding that the instructional language is not ambiguous or reasonably likely to result in the jury misapplying the law.

In *Quinonez*, the court[4] concluded the instructions were not ambiguous when considered as a whole. "These instructions did not allow the jury to

---

[4] The majority opinion in *Quinonez*, by Justices Poochigian and Detjen, did not cite *Medellin*. The concurring opinion of Justice Peña expressed some concern about potential ambiguity of the instruction, but distinguished *Medellin* and concluded any potential ambiguity in the instruction was theoretical in the case. (*Quinonez, supra*, 46 Cal.App.5th at pp. 467–468 (conc. opn. of Peña, J.).)

find defendant guilty and the enhancements true upon the determination that [the victim's injury] only constituted 'moderate' harm. Instead, the instructions expressly stated the jury had to find [the] injuries were 'significant or substantial,' consistent with the well-recognized definition of great bodily injury." (*Quinonez, supra*, 46 Cal.App.5th at p. 466.) In addition, the court noted that the prosecutor's closing argument was consistent with those instructions. (*Ibid*.) Accordingly, the court held "[t]he instructions given in this case correctly stated the legal definition of great bodily injury, the prosecutor's closing argument was consistent with those definitions, defendant's substantial rights were not violated, and counsel was not prejudicially ineffective for failing to object to the instructions." (*Id.* at p. 467.)

In *Sandoval*, the majority[5] explicitly disagreed with the reasoning of *Medellin* and concluded that the definition of great bodily injury in the instruction was not ambiguous. " '[A] jury instruction cannot be judged on the basis of one or two phrases plucked out of context . . . .' [Citations.] Thus, it is improper to assess the correctness of the instructional definitions of great bodily injury by focusing exclusively on the use of 'or' in the phrase 'minor or moderate harm.' Rather, that phrase cannot be divorced from the one that immediately precedes it: 'injury that is *greater than*' (italics added). '[I]njury that is greater than minor or moderate harm' cannot reasonably be read to mean injury that is more than minor but less than moderate. Such an interpretation simply does not make sense, legally or grammatically,

---

[5] Justice Snauffer, the author of *Medellin*, dissented in *Sandoval* after finding the instruction ambiguous, but concluded the error was harmless given the evidence of the injuries and the arguments of counsel, which correctly stated the law. (*Sandoval, supra*, 50 Cal.App.5th at pp. 363—364 (conc. & dis. opn. of Snauffer, J.).)

17

particularly when the phrase is preceded by the explanation that great bodily injury means physical injury that is 'significant or substantial.' In our view, there is no reasonable likelihood the jury would parse the instructions in such a tortured way as to create the ambiguity defendant and the *Medellin* majority find." (*Sandoval, supra*, 50 Cal.App.5th at p. 361.)

Most recently, the Fourth District in *People v. Caparrotta* (2024) 103 Cal.App.5th 874, 904 (*Caparrotta*) reached the same conclusion.

Defendant urges us to follow *Medellin*. The Attorney General counters that "no published case has followed *Medellin*" and urges us to follow *Quinonez, Sandoval*, and *Caparrotta*. We agree with the reasoning of the latter cases and thus adopt the Attorney General's position. Accordingly, we conclude that CALCRIM No. 3160 "clearly informed jurors that great bodily [harm] meant significant or substantial physical injury, i.e., injury that was greater than moderate harm." (*Sandoval, supra*, 50 Cal.App.5th at p. 362.) In short, the definition of great bodily injury in CALCRIM No. 3160 is neither erroneous nor ambiguous.[6]

---

[6] The fact that in October 2025, after defendant's trial, the Judicial Council Advisory Committee revised CALCRIM No. 3160 to eliminate the words "or minor" in the definition of "great bodily injury" does not affect our determination that the jury instruction was proper as given here. (CALCRIM No. 3160, revised Oct. 2025 ["Great bodily injury means significant or substantial physical injury. It is an injury that is greater than moderate harm."].) Pattern jury instructions "are not themselves the law, and are not authority to establish legal propositions or precedent." (*People v. Morales* (2001) 25 Cal.4th 34, 48, fn. 7.) Further, the revision of a CALCRIM instruction does not necessarily mean the prior version was defective. (See, e.g., *People v. Lucas* (2014) 60 Cal.4th 153, 294 ["The fact that the commission [established by the Judicial Council] ultimately drafted the newer CALCRIM instructions, which the Judicial Council subsequently adopted [citation], does not establish that the prior CALJIC instructions were constitutionally defective. 'Nor did their wording become inadequate to

Nor are we persuaded by defendant's argument that "[i]n the context of this particular trial, the jury was reasonably likely to misapply the instruction." (Boldface omitted.)

As defendant acknowledges, the prosecutor's closing argument accorded with CALCRIM No. 3160, and he did not argue that an injury less than moderate would suffice. For this reason, this case is distinguishable from *Medellin*, where the prosecutor improperly argued to the jury that the injury need only be greater than minor. (*Medellin*, *supra*, 45 Cal.App.5th at pp. 531–532.)

Defendant nonetheless complains that "[n]either the attorneys nor the court explained the great bodily injury standard beyond the terms of the jury instruction" and thus "the jury was never explicitly informed that greater-than-moderate harm was required." The argument goes, as he puts it in his reply brief, "Unless counsel or the court affirmatively clarifies the proper standard, the ambiguity persists and there are no assurances that the jury applied the correct legal interpretation." We disagree. Defendant's argument assumes that CALCRIM No. 3160 is inherently ambiguous. For the reasons stated above, the instruction is not. Moreover, " '[t]he term "great bodily injury" has been used in the law of California for over a century without further definition and the courts have consistently held that it is not a technical term that requires further elaboration.' " (*People v. Escobar* (1992) 3 Cal.4th 740, 750, fn. 3 (*Escobar*).)

Defendant next asserts that "[t]he victim's injuries were relatively minor which meant the jury could have found more-than-minor but less-than-

inform the jury of the relevant legal principles or too confusing to be understood by jurors.' "], disapproved on another ground in *People v. Romero and Self* (2015) 62 Cal.4th 1, 53, fn. 19.)

moderate harm."  He points to evidence that "Folsom picked himself up" after defendant attacked him, called a friend to take him to the hospital after defendant attacked him, and required no "had no follow-up medical care" after the hospital visit.  But contrary to defendant's suggestion, the existence of great bodily injury does not require that the victim suffer " 'permanent,' 'prolonged' or 'protracted' disfigurement, impairment, or loss of bodily function" (*Escobar*, *supra*, 3 Cal.4th at p. 750) or a showing of a necessity of medical treatment (*People v. Wade* (2012) 204 Cal.App.4th 1142, 1150), much less extensive medical treatment.  "Some physical pain or damage, such as '[a]brasions, lacerations, and bruising can constitute great bodily injury.' " (*Quinonez*, *supra*, 46 Cal.App.5th at p. 464; see, e.g., *People v. Corona* (1989) 213 Cal.App.3d 589, 592–593, 595 [swollen jaw, bruises to head and neck, and sore ribs were sufficient to show great bodily injury]; *People v. Sanchez* (1982) 131 Cal.App.3d 718, 733 [affirming great bodily injury finding where victim sustained multiple abrasions and lacerations to her back, and bruising of her eye and cheek].)

Moreover, we may not reweigh the evidence, which defendant essentially asks us to do here.  Instead, we must view the evidence in the light most favorable to the judgment (*People v. Hill* (1998) 17 Cal.4th 800, 848–849), presume the existence of every fact the jury could have reasonable deduced from the evidence (*People v. Kraft* (2000) 23 Cal.4th 978, 1053), and resolve "neither credibility issues nor evidentiary conflicts." (*People v. Young*, *supra*, 34 Cal.4th at p. 1181.)  Thus, " ' "[i]f there is sufficient evidence to sustain the jury's finding of great bodily injury, we are bound to accept it, even though the circumstances might reasonably be reconciled with a contrary finding." ' " (*Escobar*, *supra*, 3 Cal.4th at p. 750.)

The evidence here showed that defendant punched defendant's face and

head, which then caused defendant to fall and hit his head on the sidewalk. As a result, Folsom's head "split open" and then bled "profusely," his lip was also split, and he was in "a lot of pain." These injuries were severe enough to require Folsom to go to the hospital and receive staples to the back of his head and stitches to his lip. After receiving this treatment, Folsom was still in "a lot of pain." The jury saw the videos of defendant punching Folsom and him falling him to the ground, as well as photographs of Folsom's injuries. Viewing the evidence in the light most favorable to the judgment, we conclude the jury could reasonably find that Folsom's injuries amounted to significant or substantial physical injury that was greater than moderate harm.

Defendant next mentions that neither the jury instructions nor the arguments of counsel "clearly distinguish[ed] the levels of harm required for great and serious bodily injury" or "explain[ed] how those two terms relate to each other." He then points to a portion of closing argument, during which his trial counsel told the jury "that great bodily injury is something more than serious bodily injury," the prosecutor objected on the ground that counsel misstated the law, and the court sustained the objection. According to defendant, "This objection might have inadvertently suggested to the jury that the opposite was legally true: that serious bodily injury is more severe than great bodily injury." This argument is unpersuasive.

To begin with, any claim of juror confusion arising out of the above closing argument is barred by the doctrine of invited error. "Under this doctrine, 'when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error.' " (*People v. Midell* (2025) 113 Cal.App.5th 1060, 1072.) " 'In cases involving an action affirmatively taken by defense counsel,' as opposed to an

omission or failure to act, 'we have found a clearly implied tactical purpose to be sufficient to invoke the invited error rule.' " (*Id.* at p. 1073.) As discussed above, during a conference on jury instructions, defense counsel argued that great bodily injury is "a higher standard" and "a more severe injury" than serious bodily injury, and requested an instruction to that effect. The court denied the request, reasoning that "to introduce this idea of a continuum that great bodily injury is somehow also a little bit more severe than serious bodily injury is an incorrect statement of the law" and that "the jury instructions for each count . . . are sufficient in defining the applicable meaning of either great bodily [in]jury or serious bodily [in]jury."[7] Despite this, defense counsel later told the jury in closing argument his view that "that great bodily injury is something more than serious bodily injury," prompting the prosecutor to object on the ground that this misstated the law. To the extent defendant contends that this colloquy confused the jury, it was defense counsel who invited the confusion in the first place by introducing the existence of a legal "hierarchy" between great and serious bodily injury and expressing his view on it.

But even if defendant's claim were not barred by the doctrine of invited error, it lacks merit. For one, defendant's argument that the prosecutor's

---

[7] Which findings, we note, defendant does not challenge on appeal. Nor does defendant challenge the court's denial of his motion for new trial, which, as noted above, argued among other things that the court should have instructed the jury that great bodily injury is "more serious" than serious bodily injury. Consequently, defendant impliedly concedes that the court correctly determined that the instructions on great and serious bodily injury may stand on their own without further instruction distinguishing them. (See *Westside Center Associates v. Safeway Stores 23, Inc.* (1996) 42 Cal.App.4th 507, 529 [party "effectively concedes" issue by failing to address it in brief]; *Glendale Redevelopment Agency v. Parks* (1993) 18 Cal.App.4th 1409, 1424 [parties "impliedly concede" an issue by failing to address it].)

22

objection suggested to the jury that serious bodily injury is more severe than great bodily injury is speculative. As the Attorney General correctly observes, the court instructed the jury that if it sustained an objection, "you must ignore the question." As to closing arguments specifically, the court instructed the jury that "[i]f either attorney mistakes the evidence or the law, you will rely on the evidence which you saw and heard here in the courtroom and the instructions of law that I just read." We presume the jury followed the court's instructions and disregarded the improper statement from defense counsel. (See *People v. Covarrubias*, *supra*, 1 Cal.5th at p. 926.) In any event, assuming the jury believed that serious bodily injury was a "more severe" or a "higher" legal standard than great bodily injury, defendant fails to explain, and we fail to see, how that circumstance could have misled the jury to find great bodily injury could be satisfied solely on the basis the injuries were greater than minor.

Likewise unavailing is defendant's assertion that "[t]he jury returned defective verdicts that indicated its confusion about the definition of great bodily injury and its relationship to serious bodily injury." As discussed above, during deliberations, the jury submitted a note stating its intent that defendant "is guilty of Great Bodily injury," but not guilty of serious bodily injury, and asked the court whether the verdict forms they filled out reflected this intent. In response, the court stated, "it sounds to me like you're having some confusion on how to complete the verdict forms," going on to reinstruct the jury with CALCRIM No. 3517, the standard instruction on how to consider a lesser included offense in conjunction with a greater and how to properly fill out the verdict forms. Afterwards, however, the jury twice returned verdict forms that had inconsistent answers for the great bodily injury enhancements for counts 1 and 2, prompting the court to re-instruct

23

the jury on how to fill out the verdict forms. As defense counsel described the jury's confusion, "the only . . . way this could have possibly made sense to the jury is if they considered serious bodily injury to be worse than great bodily injury, and that great bodily injury was basically a lesser that they didn't have to decide. And I think that's part of the confusion in the instructions."

As the Attorney General correctly observes, the record reflects the jury was clear about what it wanted its verdict to reflect and was confused only about the process of filling out the verdict forms. In other words, the jury's struggles with the verdict forms were not evidence that it was confused about the substantive definition of great bodily injury provided in CALCRIM No. 3160.

Finally, defendant fails to demonstrate the jury misunderstood and misapplied the law based on its actual verdicts. As to count 1, the jury found defendant guilty of assault with force likely to produce great bodily injury in count 1, and found the true attached great bodily injury enhancement. As to count 2, it found defendant not guilty of battery serious bodily injury in count 2, but instead guilty of the lesser included offense of simple misdemeanor battery. Defendant argues that the jury's conviction for simple battery, but not the greater offense of battery with serious bodily injury, indicates the jury disbelieved Folsom's testimony that he lost consciousness and suffered from a concussion, since the instructions on the definition of serious bodily injury enumerated loss of consciousness and concussions as injuries that "may" meet the standard. (CALCRIM No. 925.) If the jury believed that testimony, defendant reasons, it would have convicted him of battery with serious bodily injury. Making this assumption, defendant claims that the jury must have misunderstood the instruction for great bodily injury by believing that a less-than-moderate-injury could suffice. We are unpersuaded.

24

Great bodily injury means significant or substantial physical injury, and such injury need not cause permanent, prolonged, or protracted disfigurement, impairment, or loss of bodily function. (*Escobar*, *supra*, 3 Cal.4th at p. 750.) The injury "need not meet any particular standard for severity or duration." (*People v. Le* (2006) 137 Cal.App.4th 54, 59, citing *Escobar*, at pp. 746–747.) As noted above, while the statutory definition of serious bodily injury includes a list of qualifying injuries, such as loss of consciousness or concussions, the statutory definition of great bodily injury does not. (*Cabrera*, *supra*, 14 Cal.5th at p. 483.) Here, the jury was instructed on the distinct definitions.

We assume arguendo, as defendant asserts, that the jury's acquittal on the battery with serious bodily injury meant it may have doubted whether there was an injury akin to a loss of consciousness, concussion, protracted loss or impairment of function of a bodily member or organ, a wound requiring extensive suturing, or serious disfigurement. On the other hand, as explained above, the overall injuries to Folsom's head and face, including the lacerations, bleeding, and pain, still could have reasonably led the jury to finding significant or substantial physical injury that was greater than moderate harm. We thus reject defendant's claim that the jury's verdicts demonstrated it misinterpreted the instruction on great bodily injury to mean that less than moderate harm could suffice.

In sum, the court properly instructed the jury on the definition of great bodily injury, we see no reasonable likelihood the jury applied the instruction in an impermissible manner, and defendant's substantial rights were not violated.[8]

---

[8] Given our conclusion, we do not address his arguments regarding the prejudice stemming from the claimed error.

25

## DISPOSITION

The judgment is affirmed.

_____

RICHMAN, J.

We concur.

_____

STEWART,  P. J.

_____

DESAUTELS, J.

(A172968N)